No. 12859

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

PAMELA A. GILBERT,

Plaintiff and Respondent,

-vs-

WILLIAM E. GILBERT,

Defendant and Appellant.

---

Appeal from:   District Court of the Sixth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair & Murphy, Billings,
Montana
Arnold A. Berger argued, Billings, Montana
Brown and Gilbert, Bozeman, Montana
Gene I. Brown argued, Bozeman, Montana

For Respondent:

Huppert and Swindlehurst, Livingston, Montana
Joseph T. Swindlehurst argued, Livingston, Montana

---

Submitted:   November 21, 1974

Decided: FEB 13 1975

Filed: FEB 13 1975

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by defendant-father from a judgment dated August 7, 1974, of the district court, Park County, denying his petition for a legal change of custody from the mother.

The parties were married approximately seven and one half years and at the time of the divorce on April 4, 1972, there was one issue of the marriage a daughter Whitney, age 3 years. The parties entered into a voluntary property settlement and custody agreement and this agreement was filed with the court and made a part of the judgment which was granted by default to plaintiff-wife. Custody of the minor child was placed with the mother and provided liberal visitation to the father; with two months temporary custody to the father during the summer months of June, July and August each year, with the same liberal visitation privileges to the mother during the father's custody. In addition, there were provisions for custody on holidays.

In the summer 1972, the child resided with the mother who was attending summer school in Bozeman. The mother allowed the father, who also lived in Bozeman, frequent visitation.

In the fall 1972, the mother moved to Gardiner, Montana to take a teaching position. During the football season whenever the Bobcats had a home game, the mother brought the child to Bozeman and allowed her to stay with the father for the weekend. During that school year, the father traveled to Gardiner two or three times to visit the child.

In the summer 1973, the child resided with the father for approximately two months as provided in the divorce decree. She then accompanied her mother to Iowa for two or three weeks to visit her maternal grandparents.

During this time both parents had become concerned about the child. She had become quite shy around people and seemed to be

having emotional troubles which were not improving, but rather seemed to be getting out of hand. After consulting with professional people and the University School officials, both parents agreed in September 1973, that the child should stay with the father in Bozeman and attend the child development center sponsored by Montana State University. This program is basically a nursery school designed to teach young children to relate with other children. The child was enrolled in the school and did very well.

At the end of fall quarter, the mother wanted the child back but allowed her to continue in the school after talking to her teacher who encouraged the mother to keep the child in the school. The mother again attempted to get the child back at the end of winter quarter, but gave up after being threatened with legal action by the father. In May 1974, the father petitioned for the custody of his daughter, Whitney. The court refused to award him custody. At the end of the school term, the mother was served with a restraining order issued to prevent her from gaining custody until the instant appeal was completed.

The mother remarried on June 15, 1974. Her husband is a Facilities Planning Engineer with Mountain Bell Telephone Company, permanently assigned to Cheyenne, Wyoming. The couple has purchased a two bedroom home. The new husband's earnings are $14,500 per annum. He has three children by a previous marriage and pays $225 per month child support.

On appeal, the father challenges the constitutionality of section 91-4515(2), R.C.M. 1947, which provides in essence that a child of tender years, everything else being equal between the two parents, should be awarded to the mother. He also attacks section 21-137, R.C.M. 1947, as unconstitutional. That section provides the wife may be awarded attorney fees from the husband.

There is no like provision for the husband.  The father contends that both statutes discriminate on the basis of sex in violation of Article II, Sec. 4, 1972 Montana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

The constitutional questions presented for review were not raised in the trial court and were not certified to this Court as is required by Rule 38, M.R.App.Civ.P., therefore there was no notice to the attorney general.  The attorney general must be given an opportunity under Rule 38 to appear in defense of legislative acts which are challenged on constitutional grounds.

The father's final issue is "Did the trial judge abuse his discretion in failing to modify the decree of divorce to award custody of the minor child of the parties to defendant husband?"

The father argues there has been a significant change of circumstances since the original divorce decree which warrants the change of custody of Whitney from the mother to the father.  However, the district court in its findings of fact No. IX stated:

> "That there has been no material change of circumstances warranting a modification of the decree."

In its conclusion of law I, the court stated:

> "That no material change of circumstances exists that warrant a modification of the original decree, and that it is for the best interests of the minor child that she remain in the custody of her mother, subject to the visitation and summer custody on the part of her father, as provided in the original decree."

This Court has consistently held that in custody cases the underlying principle, paramount to all others, is the welfare and best interests of the child and no change in the child's custody will be allowed except where adequate cause therefor arises out of a changed condition.  That changed circumstances or conditions are based on the principle that stability of home life of children is a vital factor to their well being and the turmoil of

- 4 -

litigation must be minimized and somewhere brought to an end. This Court also recognizes the superior position of the trial judge in such matters and will not disturb the trial court's findings unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion. Bayers v. Bayers, 129 Mont. 1, 281 P.2d 506; In the Matter of the Adoption of Dwayne Biery, a Minor Child, ____Mont.____, 522 P.2d 1377, 1378, 31 St.Rep. 458.

It is uncontradicted in the record that after the first year under the original custody agreement the child became emotionally ill. The parties recognized this change of condition and physical custody was given to the father at that time to serve the best interest of this child. Disregarding the stated intentions of the parties at that time and only considering the natural consequences of their acts, we view the situation solely from the point of view of the best interests of this child.

Physical custody of this child in its present environment is a fact and has been for a long period of time, when viewed in the light of the formative years of a four year old child at the time she came into the present environment after an unsuccessful one year from age three to four years in the first agreed custody arrangement. This child will be six years old on March 16, 1975.

There are no allegations of unfitness or the like before this Court. The change of custody is agreed to have been successful in so far as the emotional health of the child was concerned. There is no conflict on this point. There is testimony in the record from seven people, other than the parties, who appear to have been friends of both of the parties and have observed the present environment. They all agree to the high quality of the present custody environment and the healthy emotional effect it has had on the child.

The return of physical custody to the mother is based

primarily on the maternal desire and love for the child which is no doubt genuine and sincere. The mother has remarried to a man who has a responsible position out of the state of Montana and is paying support for his own children by a prior marriage. The step-father did not appear in court, so that any evaluation could be made by the trial court concerning the understanding and willingness or qualifications he might have to assume the responsibilities that would attend the moving of this child who has formed strong emotional ties with her own father.

As this Court said in Biery:

"Directing our attention to the first issue, we note that this Court has consistently looked to the best interests of the child in determining custody. [Citing cases] In awarding the custody of a minor, section 91-4515(1) specifically provides that the court is to be guided:

"'By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare * * *'

"The parent's right to the custody of her minor child is not an absolute one, even though it be conceded that she is a fit and proper person. In all such cases the crucial factor is the child's welfare, both material and psychological, considering in particular the ties of affection the child has formed and the consequences of breaking those ties. * * *"

The agreed facts in this case demonstrate several inter-related changes of condition that would warrant consideration by the court, inasmuch as they bear directly on the welfare of this child, and the trial court's holding that none exist was error.

In view of the history of this child and the emotional problems that have so recently just begun to disappear in the present environment, we feel that to uproot her again and place her in a strange home in another city, with a step-father who is unknown to the child or to the court, as it relates to his role as a father, could have an extremely detrimental effect on the child. The record before this Court will not justify the uprooting

- 6 -

of the child from the security she now feels and place her in an environment of which this Court is unsure.

The judgment of the district court is reversed and the cause remanded to the district court to place legal custody in the father and provide the mother with visitation rights equivalent to those enjoyed by the father in the original decree of divorce.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices