No. 13487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

———————————

RICHARD W. HOLM,

Plaintiff and Appellant,

-vs-

ALLENA N. HOLM,

Defendent and Respondent.

———————————

Appeal from: District Court of the Thirteenth Judicial
District,
Honorable C. B Sande, Judge presiding.

Counsel of Record:

For Appellant:

Beiswanger and Wilson, Billings, Montana
Gary L. Beiswanger argued, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana
Richard W. Anderson argued, Billings, Montana

———————————

Submitted: January 25, 1977

Decided: MAR 2 1977

Filed: MAR 4 1977

Thomas J. Kearney

Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by the father of two minor girls from an order of the district court, Yellowstone County, changing their custody to their mother.

The children of the parties are twin girls who were six years old at the time of their parents' divorce. On June 2, 1975, their father was awarded a default divorce from their mother. The decree awarded custody of the girls to the father, with reasonable rights of visitation to the mother, pursuant to a written custody agreement so providing which was approved, confirmed and made a part of the decree.

In October, 1975, the father and the two girls moved to Rapid City, South Dakota and have resided there continuously since that date.

On October 20, 1975, the mother filed an affidavit seeking a change in custody to her based upon a change in circumstances of the parties since entry of the original decree four months previously. The affidavit alleged that at the time of the divorce the mother was in a physically and mentally debilitated condition as a result of surgery making her ability to care for the children doubtful; that she signed the custody agreement under these circumstances; and that she had since recovered and was physically capable of caring for the children. She also alleged the father's inability to care for the children. She sought an award of child support on change of custody to her.

Following a hearing, the district court made a finding that the mother's application for change of custody was premature and denied it. The court's order further provided that " * * * This matter is continued for further consideration at a later date upon application of either party."

On June 28, 1976, the mother filed a second affidavit

and application for change of custody. This affidavit, in addition to the matters alleged previously, alleged further changes in circumstances consisting of her remarriage, her maintenance of a suitable home for the children, the willingness of her present husband to have the children in the home, her return to steady employment, and her further physical recovery. She again sought an award of child support on change of custody.

Following denial of the husband's motion to dismiss for lack of jurisdiction, the district court held a hearing on the wife's application for change of custody.

On August 4, 1976, the district court entered findings of fact, conclusions of law and an order changing custody to the mother and awarding her child support of $65 per month per child.

In its findings the district court found that at the time the mother signed the custody agreement incorporated in the divorce decree she was in a physically and emotionally debilitated state; that at the time of the mother's first application for change of custody the court was of the opinion " * * * that [the mother] had in fact not fully recovered from her physical problems and was not yet restored to normal health and vitality" and that for these reasons, the court "entered an interim order" continuing custody in the father but invited further consideration of the matter at a later date upon application of either party; that the remarriage of the mother, establishment of a new home, her recovery from her physical impairments, and her return to work, finding she is physically able to meet the demands of her occupation and homemaking are material changes in circumstances from those existing at the time of the divorce.

The court further found that it would be in the best

interests of these female children approaching their eighth birthdays that their custody be placed with their mother. The findings state that " * * * This would not necessarily be the case if they were male children, where their interests and needs * * * would be more in keeping with [their father's] situation." and "Everything else being equal, however, and for well-known biological and emotional reasons, the Court determines that it would be in the best interests of these female children to have their primary guidance provided by their mother, who appears at this time to be a fit and proper mother. "

There are two issues assigned for review on appeal:

(1) Did the district court have jurisdiction to entertain the mother's petition for change of custody?

(2) Did the district court abuse its discretion in changing custody?

The jurisdictional issue determines the outcome of this appeal. The Uniform Marriage and Divorce Act was enacted by the Montana legislature in 1975. Its effective date was January 1, 1976. The provision of that Act pertinent to this appeal is codified as section 48-339, R.C.M. 1947, and reads:

> "Modification. (1) No motion to modify a custody decree may be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral, or emotional health.
>
> "(2) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:
>
> "(a) the custodian agrees to the modification;
>
> "(b) the child has been integrated into the family

- 4 -

of the petitioner with consent of the custodian;
or

"(c) the child's present environment endangers
seriously his physical, mental, moral, or emo-
tional health, and the harm likely to be caused
by a change of environment is outweighed by its
advantages to him.

"(3) Attorney fees and costs shall be assessed
against a party seeking modification if the court
finds that the modification action is vexatious
and constitutes harassment."

Subsection (1) above specifically bars an application

for change of custody within 2 years of an existing custody award,

subject to an exception not pertinent to this case. Here the

original custody award was made on June 2, 1975; the appli-

cation for change of custody was filed on June 28, 1976; and the

order granting the change of custody was entered on August 4, 1976.

The district court lacked jurisdiction to change custody less

than 14 months after the original custody award based on the best

interests of the children where, as here, it specifically found

that the custodian " * * * is and has been a fit and proper

father."

The rationale behind this provision is expressed in this

language in the Comment of the Committee which acted for the

National Conference of Commissioners on Uniform State Laws in

promulgating the Uniform Marriage and Divorce Act:

"Most experts who have spoken to the problems of
post-divorce adjustment of children believe that
insuring the decree's finality is more important
than determining which parent should be the cus-
todian. See Watson, The Children of Armageddon:
Problems of Custody Following Divorce, 21 Syracuse
L.Rev. 55 (1969). This section is designed to
maximize finality (and thus assure continuity for
the child) without jeopardizing the child's inter-
est. Because any emergency which poses an immed-
iate threat to the child's physical safety usually
can be handled by the juvenile court, subsection
(a) [subsection 1 of section 48-339, R.C.M. 1947]
prohibits modification petitions until at least
two years have passed following the initial decree,
with a 'safety valve' for emergency situations.
To discourage the noncustodial parent who tries to
punish a former spouse by frequent motions to

> modify, the subsection includes a two-year wait-
> ing period following each modification decree.
> During that two-year period, a contestant can get
> a hearing only if he can make an initial showing,
> by affidavit only, that there is some greater
> urgency for the change than that the child's
> 'best interest' requires it. During the two-
> year period the judge should deny a motion to
> modify, without a hearing, unless the moving party
> carries the onerous burden of showing that the
> child's present environment may endanger his
> physical, mental, moral, or emotional health."
> (Bracketed material supplied.)

This rationale is persuasive. It makes sense. It explains the purpose, intent, and operation of the statute. We adopt it.

Subsection (2) of section 48-339, R.C.M. 1947, also denied jurisdiction to the district court to change custody. It requires the district court to retain the prior custodian unless he agrees to the modification, or the child has been integrated into the family of the petitioner with the consent of the custodian, or the child's present environment seriously endangers his physical, mental, moral, or emotional health to an extent where the harm to the child from a change in custody is outweighed by its advantages to the child. None of these conditions is present in this case. For the rationale and application of this subsection see Commission Comment, National Conference of Commissioners on Uniform State Laws, Uniform Marriage and Divorce Act, approved and recommended at its Annual Conference, August 1-7, 1970, with amendments approved August 27, 1971 and August 2, 1973.

The mother argues that the Uniform Marriage and Divorce Act has no application to this case. She contends that her modification proceeding was initiated prior to its adoption, continued for further consideration at a later date, and the prior law governs this proceeding.

We cannot agree with this contention. Although her

original application and the district court's order thereon occurred prior to the effective date of the Act, the district court held her application premature and denied it. While it is true that the district court at that time provided that " * * * this matter is continued for further consideration at a later date upon application of either party", it amounted to no more than an expression of the district court's continuing jurisdiction over child custody. The second custody hearing was based on another application for change of custody after the Act became effective and alleged a change in circumstances based in part on events that had occurred following the effective date of the Act. Under these circumstances we hold that the mother's application for change of custody is governed by the Act.

The order of the district court of Yellowstone County changing custody dated and filed on August 4, 1976, is vacated for lack of jurisdiction. This cause is remanded to the district court for determination of whether attorney's fees should be awarded the husband pursuant to the provisions of section 48-339(3), R.C.M. 1947.

_____
                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices