No. 13310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MURIEL R. SOLIE,

   Plaintiff and Respondent,

-vs-

ROBERT L. SOLIE,

   Defendant and Appellant.

---

Appeal from: District Court of the Fourteenth Judicial
     District,
     Honorable Nat Allen, Judge presiding.

Counsel of Record:

 For Appellant:

  Hibbs, Sweeney and Colburg, Billings, Montana


 For Respondent:

  Jones, Olsen and Christensen, Billings, Montana
  Paul G. Olsen argued, Billings, Montana

  The matter is deemed submitted on briefs.

---

       Submitted: January 26, 1977

        Decided: MAR 10 1977

Filed: MAR 10 1977

_Thomas J. Kearney_
       Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by Robert L. Solie, the father, from a final modified judgment of the district court, Musselshell County, denying his request for increased visitation rights with his minor child Peter and granting the cross-petition of Muriel Solie, the mother, for reduction of Robert's visitation rights, increase of support and attorney fees.

Muriel was granted a divorce from Robert on February 3, 1969. The decree incorporated a property settlement agreement whereby Muriel received Robert's interest in the family home, subject to a mortgage, alimony in the amount of $250 per month through September 1, 1971, support of $100 per month for each of the two minor children, Suzanne age 9 years and Peter age 2 years, attorney fees, the family car and satisfaction of all other obligations of the parties. In addition, Robert agreed to maintain a policy of life insurance of $50,000 upon his life with the children as beneficiaries.

Robert Solie is a 39 year old insurance man with supervisory duties that require his absence from home several days a week. His new wife Ann is a school teacher and together they have an income of $33,270. They have a 4 bedroom, 2 story home on 10 acres of ground in Emerald Hills near Billings, Montana and can provide horseback riding, sledding, swimming and other activities associated with rural living. Residing in the home are Suzanne, now age 15 (daughter of parties hereto); Jeffrey age 7 (Ann's by previous marriage); and Jennifer, age 4, the daughter of Robert and his new wife Ann.

Muriel is a 36 year old school teacher with her Master's degree and working on a Doctor's by taking several classes a quarter

at Eastern Montana College, Billings, Montana. She has not remarried and lives in the small home she obtained in the divorce property settlement, with son Peter, now aged 9 years, the subject of this litigation. Her income is a gross of $11,500 per year, or $680 take home per month for 10 months. She has $400 in the Teacher's Credit Union saved for expenses during the two months she receives no salary and a bank balance of $70. She drives a 1967 Pontiac automobile. She purchased a TV for the children just last year for $1.00.

Since the divorce in 1969 Robert has failed to meet his financial obligation in regard to support and has been delinquent most of the time. This has created a stormy and hostile atmosphere with several contempt proceedings, numerous execution writs, etc. from 1970 until the present.

On June 21, 1971, the district court found it necessary to limit the visitation rights of Robert after hearing his petition for increased visitation. In its order the court stated:

> "* * * the Court deems it necessary that some firm direction be given to petitioner---defendant's visitation privileges * * *."

In December 1978, the court agreed to again approve increased visitation for Robert which was rewarded in 1975 with a less than straightforward maneuver by Robert to gain full custody of daughter Suzanne. The record further reveals a serious alienation has developed between Muriel and her daughter since custody went to Robert, which was evidencing itself during the custodial change.

On January 2, 1976, Robert filed a petition to increase his temporary custody rights with the minor son Peter to include 7 alternate holidays, 6 weeks during the summer in addition to alternate weekends from Friday to Sunday.

Muriel filed her cross-petition January 9, 1976 asking for a $50 per month increase in support for Peter and alleging Peter does not enjoy visitation at Robert's residence and asked for a decrease in visitation rights to Robert to one weekend a month, rather than the two now in effect and attorney fees in the amount of $350.

The matter was heard on January 12, 1976 and the court filed its modified decree on March 3, 1976. After extensive findings of fact, the court made conclusions of law that the best interest of the minor child Peter Solie, so that there would be no mental or emotional detriment,would be best served by reduction of the visitation right to one weekend per month; granted the increase in child support to Muriel and awarded her $250 attorney fees. From this modified decree Robert appeals.

The issue presented for review is the application of the facts of this case to the Uniform Marriage and Divorce Act, section 48-337, R.C.M. 1947, which establishes the statutory standard for limitation of noncustodial parent's visitation.

The Uniform Marriage and Divorce Act does apply to this matter. Section 48-341(3), R.C.M. 1947; Richard W. Holm v. Allena V. Holm, _____ Mont._____, _____P.2d _____, 34 St. Rep. 118, decided March 2, 1977.

Section 48-337, R.C.M. 1947, provides in pertinent part:

"(2) The Court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health."

Here Robert argues that "The court did not find, nor could it find on the evidence presented, that the current visitation schedule would endanger seriously Peter Solie's physical, mental, moral or emotional health. Rather the court in Conclusion of Law No. 1 applied the 'best interest of child' rationale in concluding that visitation should be reduced. That test is clearly not applicable to a reduction in visitation."

He further argues this Court has not previously considered or interpreted the language contained in section 48-337, R.C.M. 1947, and cites the Court to a Colorado decision that very briefly alluded to the problem, but does not disclose any evidence in that case. He further quotes from the Commissioners' Note directed to the "Act" under §407, 9 U.L.A. p. 509, which is the same as section 48-337, R.C.M. 1947:

> "* * * Although the standard is necessarily somewhat vague, it was deliberately chosen to indicate its stringency when compared to the 'best interest' standard traditionally applied to this problem. The special standard was chosen to prevent the denial of visitation to noncustodial parent on the basis of moral judgments about parental behavior which have no relevance to the parent's interest in or capacity to maintain a close and benign relationship to the child. The same onerous standard is applicable when custodial parent tries to have the noncustodial parent's visitation privileges restricted or eliminated." (Emphasis supplied.)

The reference to parental behavior in the Commissioners' Note is pointed at the Uniform Marriage and Divorce Act §402 which was not adopted by Montana. The exact pertinent language in §402 is:

> "The Court shall not consider conduct of a proposed custodian that does not affect his relationship to the child."

See: 37 Montana Law Review, No. 1, p. 129.

- 5 -

However, this Court moved away from that type of moral judgment sometime ago. Foss v. Leifer, ____Mont.____, 550 P.2d 1309, 33 St. Rep. 528, 530. The standard of physical, moral, mental or emotional health used in the Act does not introduce any new concepts into the law as it has existed in Montana for many years. See: Section 91-4515, R.C.M. 1947 (repealed in 1975 by the adoption of the Uniform Marriage and Divorce Act); Gilmore v. Gilmore, 166 Mont. 47, 530 P.2d 480; Gilbert v. Gilbert, 166 Mont. 312, 316, 533 P.2d 1079; In re Adoption of Biery, 164 Mont. 353, 522 P.2d 1377 and cases cited therein.

Therefore, no interpretation of the new statute is required. Further, the standard announced in the Montana cases cited above, and most recently in Gilbert is:

> "This Court also recognizes the superior position of the trial judge in such matters and will not disturb the trial court's findings unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion."

Here, we do not find abuse of discretion or mistake of law in the record as it stands, however, we do not have available to us the entire record. Both parties agree important discussions were had by the trial judge in chambers with the parents together and with counsel and then with the children, with counsel present. There were no objections placed in the record before us to the lack of a record of these proceedings. Section 48-334(1), R.C.M. 1947.

We find substantial evidence in the record to support the increase in child support in the amount of $50 per month. The mother's testimony that her costs had increased $75 per month since the father took full custody of Suzanne was not refuted. The fact

she has no funds except for Credit Union savings which must apply to expenses during the two months she receives no salary was not questioned. The lack of ability to pay attorney fees is not questioned. Robert complains that Muriel's financial picture was not sufficiently explored yet we find no issue presented that this opportunity was denied to counsel. This Court is mindful of its holding on attorney fees in First Security Bank of Bozeman v. Tholkes, _____Mont._____, 547 P.2d 1328, 33 St. Rep. 341. Yet no useful purpose will be served to require a hearing on reasonableness when only a nominal fee of $250 was ordered paid for the contested custody proceedings.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices.

- 7 -

Mr. Justice Daniel J. Shea dissenting in part and concurring in part:

I concur in the result reached as to visitation and child support but not in all that is stated on these matters.

However, I dissent to this Court allowing an attorney's fee of $250 as entered by the trial court, without proof of the value of the attorney's fee. I do not question that the fee set by the trial court was a reasonable one, but if we are going to follow the recent case of First Security Bank of Bozeman v. Tholkes, ____Mont.____, 547 P.2d 1328, 33 St.Rep. 341 (decided March 30, 1976), then the district court should take evidence on the value of the attorney's fee before determining the amount. This would be a relatively simple procedure.

A fee that is considered nominal to one party to a lawsuit could well be considered astronomical to the opposing party. That is precisely why there should be a hearing.

_____
Justice.