MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
D.A., the mother, appeals from a judgment of the District Court of the Twelfth Judicial District, Hill County, awarding joint custody of B.T.S. to K.S., the father, and herself and making her award of one-half the prenatal care costs payable in installments beginning in January 1987 with no interest due until then. Reversed for findings.
The mother and father were divorced on August 7, 1981. They were not aware that the mother was pregnant at the time of the dissolution. When their son, B.T.S., was born two months premature on December 17, 1981, the mother selected her maiden name as his surname.
Both parents resided at Swan Lake, Montana at the time of the birth but the three of them never resided together as a family unit. Following B.T.S.’s twelve-day hospitalization after his birth, the mother provided his primary care. Because he was premature and underweight, he slept on a breathing monitor device and had to be awakened every three hours to be fed.
K.S. visited B.T.S. in the hospital two or three times. When the child went home, K.S. visited twice a week at first. Later, the meetings dwindled to once a week because he and the mother could not get along. D.A. returned to her teaching job when B.T.S. was about three weeks old. She asked K.S. to assist with the night feedings and he agreed to stay two nights a week. He did not return after one week. His only other contact with the child during the first nine months occurred when he occasionally babysat.
D.A. remarried in December 1982. She and her husband farm during the summer months. In the winter they live in Whitefish where he works in a local business.
The father moved to Phoenix, Arizona to attend school in October 1982 when B.T.S. was about nine months old. He did not contact the mother until he returned to Swan Lake for Christmas. At that time, B.T.S. stayed with him for one week at the paternal grandpar *393 ents’ home where B.T.S. was familiar and comfortable. After he went back to Phoenix he did not contact the mother again until April when he wanted to arrange a visit in July, 1983. The parents disagreed over the visitation arrangements. The mother suggested B.T.S. and his father spend one week getting reacquainted through daytime visits with overnight visits the second week. The father wanted to take B.T.S. with him to Helena the first week, while he worked for relatives, and spend another week with him at the paternal grandparents’ home. The father went to Helena alone. When he returned, he spent one day with B.T.S. at the maternal grandparents’ home. The mother then brought B.T.S. to the paternal grandparents’ home where he was familiar and he spent four days with his father. After this visit, the parents did not communicate except to arrange a one week visit over Christmas in 1983.
On July 19, 1983, the father petitioned the court for joint custody of B.T.S. and requested physical custody, claiming the mother refused to allow frequent and continuous contact between the child and himself. He also requested B.T.S.’s surname be changed to his own and a determination of child support. The cause was heard on April 24, 1984. At trial, Lawrence G. Jarvis, Ph.D., a clinical psychologist specializing in young child development and family relationships, testified. He expressed the following opinions: (1) a child B.T.S.’s age would suffer anxiety and have difficulty adjusting to an abrupt change in environment; (2) the mother and stepfather had warm and loving relationships with B.T.S.; (3) B.T.S. was doing well in his development, motor skills and language; (4) B.T.S. is “bonded” to his mother; (5) custody should remain with the mother because extended periods of separation (i.e. overnight) would cause anxiety in a two-year old; (6) the father should re-enter the scene gradually to establish a long term, ongoing relationship; and (7) over a period of time, they could move into more extended visits “in line with the father’s needs.” The District Court entered its findings, conclusions and order on October 30, 1984. The court determined that “nothing precludes the awarding of joint custody;” joint custody is in B.T.S.’s best interests; both parents are likely to allow contact with the non-custodial parent; B.T.S. should carry his father’s surname; one-half the prenatal costs should be paid by the father in $100 monthly installments beginning January 1987 with interest charged from January 1987; and the father should pay child support of $100 per month. The court’s order also set out the arrangement for physical custody. B.T.S. stays with his mother from *394 August 20 to June 10, and with his father from June 11 to August 19. The non-custodial parent is to have other reasonable visitation and the parents are to alternate the major holidays. The mother does not dispute the name change or the award of child support on appeal.
We address three issues:
(1) Did the District Court err by awarding custody of B.T.S. jointly to his mother and father?
(2) Did the District Court err in the manner in which physical custody was divided between the mother and father?
(3) Did the District Court err by ordering reimbursement of the costs of the child’s birth payable in installments which would not begin until January 20, 1987 and by not awarding interest from the date of judgment?
We apply the following standard of review in custody issues:
“This Court will not substitute its judgment for that of the trier of fact. We will consider only whether substantial credible evidence supports the findings and conclusions. Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings.” Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930, cited in In re the Custody of C.C. (Mont. 1985), [215 Mont. 72,] 695 P.2d 816, 818, 42 St.Rep. 190, 193.
The appellant must overcome the presumption that the judgment of the District Court is correct. In re the Marriage of Jensen (Mont. 1979), 597 P.2d 733, 36 St.Rep. 1259.
Sections 40-4-222 and -223, MCA, require that an award of joint custody be in the best interests of the child. Relevant factors in any custody determination include:
“(1) the wishes of the child’s parent or parents as to his custody;
“(2) the wishes of the child as to his custodian;
“(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child’s best interest;
“(4) the child’s adjustment to his home, school and community; and
“(5) the mental and physical health of all individuals involved.” Section 40-4-212, MCA.
We agree with appellant’s contention that additional specific criteria should be considered when determining joint custody.
This Court recognized a commonly used specific factor in *395 Schuman v. Bestrom (Mont. 1985), [214 Mont. 410,] 693 P.2d 536, 539, 42 St.Rep. 54, 57, when we stated “. . . it seems clear that joint custody will not be satisfactory unless it exists between parents willing to cooperate with each other in custody matters.” Citing Lembach v. Cox (Utah 1981), 639 P.2d 187, 200. Other jurisdictions characterize this as a finding that both parents are able to communicate and cooperate in promoting their child’s best interests, Beck v. Beck (N.J. 1981), 432 A.2d 63, 72, and whether the parents have the ability to cooperate in their parental roles, Lumbra v. Lumbra (1978), 136 Vt. 529, 394 A.2d 1139, 1142. See also Braiman v. Braiman (1978), 44 N.Y.2d 584, 407 N.Y.S.2d 449, 378 N.E.2d 1019; Wilcox v. Wilcox (1981), 108 Mich.App. 488, 310 N.W.2d 434; and 17 ALR4th 1013, Joint Custody of Children. This specific factor relates to subsection (1) of Section 40-4-212, MCA, the parents’ wishes as to custody. In this case the respondent requested joint custody and the appellant requested sole custody of B.T.S. subject to the father’s visitation. Both parties testified as to their inability to agree about B.T.S.’s welfare. The appellant felt she carried the entire burden. She traveled with B.T.S. to other cities for visitation; she maintained the child’s contacts with paternal grandparents; and she sent pictures to the family. The respondent did not write or telephone on any regular or consistent basis after he left Montana. No evidence in the record indicates he attempted to become involved in decisions about B.T.S’s welfare. Contrary to respondent’s contention, Section 40-4-212(1), MCA is not irrelevant and “always self-evident.”
Section 40-4-212(3), MCA includes the child’s interaction and interrelationship with his parents and others who significantly affect the child’s best interests as a relevant factor in the custody determination. Here, the District Court’s only findings on B.T.S.’s relationships were that he and his step-father have developed a firm father-son relationship and that he has a good relationship with his grandparents. The District Court made no findings as to his interaction or interrelationship with either of his natural parents. “The District Court need not make specific findings on each of the elements. (Citations omitted.) However, the ‘essential and determining facts upon which the District Court rested its conclusion’ must be expressed.” In Re Marriage of Hardy (Mont. 1984), [212 Mont. 25,] 685 P.2d 372, 374, 41 St.Rep. 1566, 1569; citing, Cameron v. Cameron (1982), 197 Mont. 226, 231, 641 P.2d 1057, 1060. Particularly in a case such as this, with a post-divorce birth and an absent parent requesting *396 join custody, findings regarding the interaction and interrelationship of the child with each parent are necessary.
A third specific criterion important to an award of joint custody, is the geographic proximity of the parents’ residences. In Quinn v. Quinn (Mont. 1981), 622 P.2d 230, 38 St.Rep. 93, this court remanded an award of joint custody to determine whether the best interests of the minor children were being served since the geographic distance between the parties appeared to be fostering antagonism and instability in the home environment. The distance affects the parent’s access to each other for joint decisions and the extent and type of interaction between each parent and the child. In this case, the uncertainty of the father’s residence also impinges on B.T.S.’s stability in his environment.
The declared legislative intent for joint custody, as stated in Section 40-4-222, MCA, is “to assure minor children frequent and continuing contact with both parents . . . and to encourage parents to share the rights and responsibilities of child rearing.” This statement is based on Sections 4600 and 4600.5 of California’s Civil Code. Like Montana, California requires the courts to award custody according to the best interest of the child. However, 4600.5(c), Cal.Civ.Code, requires more than a statement that joint custody is in the child’s best interests.
“Whenever a request for joint custody is granted or denied, the court, upon the request of any party, shall state in its decision the reasons for granting or denying the request. A statement that joint physical custody is, or is not, in the best interests of the child shall not be sufficient to meet the requirements of this subdivision.” (Emphasis added.)
Changes enacted to Montana’s joint custody provisions by the 49th Legislature, effective October 1, 1985, reflect the California requirement.
Section 40-4-224(1), MCA, now provides:
“Upon application of either parent or both parents for joint custody, the court shall presume joint custody is in the best interests of a minor child unless the court finds, under the factors set forth in 40-4-212, that joint custody is not in the best interests of the minor child. If the court declines to enter an order awarding joint custody, the court shall state in its decision the reasons for denial of an award of joint custody. Objection to joint custody by a parent seeking sole custody is not a sufficient basis for a finding that joint cus *397 tody is not in the best interests of a child, nor is a finding that the parents are hostile to each other.”
Section 40-4-223(3), MCA, now provides: “. . . the court shall state in its decision the reasons and factors considered in making the award.” Reading these sections together, a district court must make findings and state conclusions based on those findings even where joint custody is awarded in accordance with the newly enacted presumption. Thus, the above discussion would apply under the recent changes as well as under the former statutory language.
On remand, the District Court should consider and make findings on these useful specific factors along with the general criteria in Section 40-4-212, MCA, to determine whether joint custody is in B.T.S.’s best interests.
The second issue concerns the District Court’s order that physical custody of B.T.S. be with appellant from August 20 to June 10 and be with respondent from June 11 to August 19. Each parent has reasonable visitation with reasonable notice and alternates custody on major holidays. “[T]he physical custody element of a joint custody award requires examination of practical considerations such as the financial status of the parents, the proximity of their respective homes, the demands of parental employment, and the age and number of children.” Beck, 432 A.2d at 72. The proximity of the parents’ residences and the apparent uncertainty of the father’s residence are of concern here. We recognize the uniqueness of these particular circumstances. B.T.S. was born after the divorce. The father has spent the greater portion of B.T.S.’s life in different states. B.T.S. has never experienced a family unit with his natural parents and has not had an opportunity to develop a father-son bond with respondent. Finally, the father has never been a decision maker for B.T.S. Under these circumstances, the order should contain findings to support the division of physical custody. This alone would be sufficient ground for remand. Jones v. Jones (Mont. 1980), 620 P.2d 850, 37 St.Rep. 1973.
In addition, the evidence at trial supports a different division of physical custody. At trial, Dr. Jarvis testified that abrupt changes in B.T.S.’s environment would cause anxiety and would be a difficult adjustment for, him. He expressed the opinion that extended periods of separation such as overnight visits would adversely affect B.T.S. and that the father should re-enter gradually to establish a long-term, ongoing relationship. He recognized that extended visits were “in line with the father’s needs.” The mother expressed concern that *398 forcing a child of this age to experience extended visitation without “warm-up” time to the father would be detrimental to B.T.S. The psychologist testified that this was an appropriate concern with a child this age. Even the father’s testimony coincided with the opinions of the mother and Dr. Jarvis:
At this point, I think one week at a time is about all that [B.T.S] could take away from his parents, or away from his home. As he grows older, I think it should grow up [sic] to be close to a five week period. Probably by the time that he is in school, at seven or eight.” Neither party offered any evidence to support the extended visitation awarded. On remand, particularly because of the unique circumstances of this case, the District Court should enter explicit findings on physical custody. These findings should reflect the District Court’s consideration of the evidence presented at trial.
This holding is consistent with newly revised Section 40-4-223(3), MCA, requiring a court to “state in its decision the reasons and factors considered in making the award.” New revisions in Section 40-4-224(2), MCA, also reflect the Legislature’s concern with the division of time in an award of physical custody.
“For the purposes of this section, ‘joint custody’ means an order awarding custody of the minor child to both parents and providing that the physical custody and residency of the child shall be allotted between the parents in such a way as to assure the child frequent and continuing contact with both parents. The allotment of time between parties shall be as equal as possible; however, each case shall be determined according to its own practicalities with the best interests of the child as the primary consideration.”
The statement that “each case shall be determined according to its own practicalities” recognizes that allotment of time may be skewed. The District Court should consider whether a division of physical custody allowing a gradual build-up of time for the father, consistent with the evidence presented at trial and consistent with the new revisions in the statutes on joint custody awards, would be appropriate if joint custody is awarded.
The District Court awarded judgment to appellant for respondent’s share of medical expenses incident to B.T.S.’s birth in the amount of $2,612. No interest was to be charged until repayment began at the rate of $100 per month beginning on January 20, 1987. The District Court acted within its discretion when it scheduled monthly installments. However, under Section 27-1-211, MCA, appellant is entitled to recover interest from the date of judgment. *399 Callihan v. Burlington Northern, Inc. (Mont. 1982), [201 Mont. 350,] 654 P.2d 972, 39 St.Rep. 2158.
Reversed for findings consistent with the above opinion.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER and HUNT concur.