No. 86-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
MARILYN JOY COLE,

        Petitioner and Respondent,

   and

JAMES W. COLE,

        Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Law Offices of Frank Altman; Ivan C. Evilsizer,
Havre, Montana

    For Respondent:

        Bosch, Kuhr, Dugdale, Warner, Martin & Kaze;
Mary Van Buskirk, Havre, Montana

_____

Submitted on Briefs: Aug. 14, 1986

Decided:  December 9, 1986

Filed:   DEC 9 - 1986

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a dissolution and custody proceeding arising from the Twelfth Judicial District in and for Hill County, Montana. Husband appeals both from the custody and dissolution determinations, as well as collateral issues. We affirm in full.

James and Marilyn Cole were married in March of 1974. During their twelve year marriage, they bore two children, Christen, age 7 at the time of this appeal, and Robby, age 5. Both Christen and Robby are gifted children; Robby, however, is diagnosed as a Down's Syndrome child and continues to manifest a learning and physical disability.

Because of Robby's special circumstances, considerable testimony was presented at trial concerning the custody arrangement which would best suit Robby's needs. Robby's teachers, therapist and trainer all testified as to the scope of responsibilities that must be addressed by a custodial parent of a Down's child. In addition, the court received the recommendation of two court appointed investigators, Susann Fowler and Dr. Robert Stehman.

In its decree of dissolution, the court awarded the parents joint custody of their children; Wife is to be the custodial parent for nine months, twenty days -- roughly equivalent to the school year -- and Husband is to be the custodial parent for two months, ten days during the summer. As to the distribution of the marital estate, the court first determined the value of all the property therein and subtracted the liabilities. Among the liabilities listed by the court were each party's attorney's fees and costs. The court then awarded Husband the estate, but ordered him to pay

2

the equivalent of one-half the net to the Wife. Finally, the court refused to place a travel restriction upon the Wife during that time in which she is the custodial parent. Wife has expressed a desire to move to Florida and Husband had sought a court order restricting her from moving outside the state of Montana with the children. Husband now appeals.

I

Husband first contests the District Court's custody determination. He presents three arguments.

A

Husband's first argument is that the District Court failed to give proper consideration to the statutorily required factors listed in § 40-4-212, MCA, and those additional factors recently articulated by this Court in In Re the Custody and Support of B.T.S. (Mont. 1986), 712 P.2d 1298, 43 St.Rep. 37.

Section 40-4-212, MCA, requires that a court determine custody in accordance with the child's best interests and that, in so doing, it consider all relevant factors, including:

> (1) the wishes of the child's parent or parents as to his custody;
>
> (2) the wishes of the child as to his custodian;
>
> (3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> (4) the child's adjustment to his home, school, and community; and
>
> (5) the mental and physical health of all individuals involved.

3

In B.T.S., supra, this Court further suggested three related criteria worthy of a court's consideration in a joint custody determination. First, in conjunction with § 40-4-212(1), a court should consider the parents' ability to cooperate in their parental roles. B.T.S., 712 P.2d at 1301. Second, in conjunction with § 40-4-212(3), a court should consider the child's relationship with both parents. B.T.S., 712 P.2d at 1301. And third, a court should consider the physical proximity of the parents' residence. B.T.S., 712 P.2d at 1301-02.

Contrary to the claims of the Husband, we find that the District Court's findings amply demonstrate that the court properly considered the required factors. First, the court made a specific finding as to the wishes of the parents and their conflicting custody requests. Second, as to the wishes of the children, Dr. Stehman testified that Christen wanted to live with her mother and the court followed his recommendation; due to Robby's disability his wishes were not determinable. Third, as to the children's relationship with their family and significant others, the court found that both children appeared to enjoy a particularly strong relationship with their mother and that she has always been uniquely involved with Robby's treatment. The court further found that the two children enjoy a close relationship with one another and noted that professional testimony recommended they remain together.

As to the fourth factor, the child's adjustment to his environment, the court's findings summarized evidence of the mother's extensive role in fostering both children's development. The court specifically noted the mother's comprehensive involvement in Robby's special care. Fifth,

4

the court noted that the special needs of Robby required that he have continuous and consistent treatment, that his school year not be interrupted by change of residence and that the children not be separated. And sixth, the court noted that the mother was contemplating a move to Florida.

In short, we find that the District Court considered the required factors and made specific findings regarding the best interests of the children in its custody decision. We do not require a court's findings to be in any particular form so long as there is substantial, credible evidence to support the court's judgment on the merits. In Re the Marriage of Burleigh (1982), 200 Mont. 1, 6, 650 P.2d 753, 756. We uphold the District Court's findings.

## B

Husband's second argument is that the District Court erred by awarding him actual physical custody for only two months, ten days. He essentially bases his argument on language within § 40-4-224(2), MCA, which states that the physical custody time allotment between parents shall be as equal as possible. Husband accordingly argues that he is therefore entitled to physical custody for at least six months.

We disagree. Section 40-4-224(2), MCA, states in relevant part:

> The allotment of [physical custody] time between parties shall be as equal as possible; however, each case shall be determined according to its own practicalities with the best interests of the child as the primary consideration. (Emphasis added.)

Thus, depending upon the circumstances of the case, equal physical custody will not be awarded if such is not in the best interests of the children.

In this case, the District Court expressly found that because of the special needs of Robby, it would clearly be in his best interest that his physical custody for the school year not be interrupted. The court further found that it would clearly be in Robby's best interest that his physical custody for the school year be with his mother and finally, that it would be in the best interests of both Robby and Christen that the two children not be separated. The court accordingly awarded Wife physical custody of both children for the school term.

The decision is amply supported by the evidence. Testimony from the children's teachers, counselors, service providers to Robby, the family doctor and the two court appointed investigators on custody all recommended to the court that the Wife continue as the primary custodial parent. Further, the school counselor, Robby's Child and Family Service counselor, Robby's Head Start teacher, and Robby's speech therapist, all testified that it would be better for Robby to maintain one residence during the school year.

Findings and conclusions of a district court as to the best interests of a child are presumptively correct and will not be overturned unless there is a clear preponderance of the evidence against them. B.T.S., 712 P.2d at 1300. We will consider only whether substantial credible evidence supports the findings and conclusions. B.T.S., 712 P.2d at 1300. In this case, there exists substantial credible evidence supporting the District Court's determination that the best interests of both children would be served by

6

remaining with their mother for the school term.  We uphold
this determination.

C

Third, Husband challenges the District Court's refusal
to issue a restriction on travel upon the Wife during that
time in which she has physical custody of the children.  As
noted, Wife has expressed her desire to relocate in Tampa,
Florida.  Husband argues that if she is allowed to take
Christen and Robby with her, he will be effectively removed
from his children for all but the two month, ten day physical
custody period to which he is entitled.

Initially, we again note that the findings and
conclusions of a district court as to the best interests of a
child are presumptively correct and will not be overturned
unless there is a clear preponderance of the evidence against
them.  B.T.S., 712 P.2d at 1300.

In this action, the District Court evidently did not
believe that a travel restriction was in the children's best
interests.  It received testimony from the Wife describing
the advanced employment opportunities available in the Tampa
area as well as testimony from one of Robby's counselors that
Tampa is likely to provide a more complete line of services
to handicapped children.  We find that the District Court's
refusal was not an abuse of discretion.

Moreover, we note that requests for impositions of
travel restrictions upon custodial parents force courts to
conduct a delicate balancing.  On the one side, courts must
consider the best interests of the child -- that statutorily
required benchmark of all custodial determinations.  And it
is by now little argued that a child's interests are best

7

served by consistent and continuing contact with both natural parents.[1] This state has explicitly adopted this goal as public policy. Section 40-4-222, MCA.

As a counterweight, courts must also consider the custodial parent's fundamental right to travel--at least interstate. See Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Some states have eased this difficult burden of the courts by enacting "anti-removal" legislation, which, to an extent, statutorily dictates when a custodial parent may remove his or her children from the state. See Mass.Gen.Laws Ann. ch. 208, § 30 (West 1981); Ill.Rev.Stat. ch. 40, § 609 (1977); New Jersey Stat.Ann. 9:2-2.

Other courts have dismissed the custodial parent's right to travel, holding that a travel restriction places no burden on the parent's right to travel; it is the children who must remain in the state. See Clark v. Atkins (Ind. 1986), 489 N.E.2d 90. We find this conclusion unpersuasive. The custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent. See Cooper v. Cooper (N.J. 1984), 491 A.2d 606, 613.

We agree, however, that the custodial parent's freedom is qualified by the special obligations of custody, the state's interest in protecting the best interests of the

---

[1] For an excellent discussion of this point, see Cooper v. Cooper (N.J. 1984), 491 A.2d 606, 616 (Schreiber, J., concurring).

child and the competing interests of the noncustodial parent. In short, it is the court's task to attempt to reconcile the interests of both parents with the best interests of the child. Cooper, 491 A.2d at 613.

As a fundamental right, the right to travel interstate can only be restricted in support of a compelling state interest. See, Shapiro, 394 U.S. at 634. We believe that furtherance of the best interests of a child, by assuring the maximum opportunities for the love, guidance and support of both natural parents, may constitute a compelling state interest worthy of reasonable interference with the right to travel interstate. Ziegler v. Ziegler (Idaho 1984), 691 P.2d 773. We caution, however, that any interference with this fundamental right must be made cautiously, and may only be made in furtherance of the best interests of the child. To that end, we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child.


II

Husband further argues that the District Court erred by failing to disqualify himself after participating in an unsuccessful settlement conference. On October 25, 1985, the court held a pre-trial conference in which possible settlement terms were evidently discussed. The parties failed to reach a settlement and the court ultimately heard the case at trial. Neither party moved the judge to disqualify himself.

Husband now argues on appeal that from the pre-trial conference the trial judge formed certain biases about the

case and acquired a personal dislike for the Husband which the judge carried into trial. Under the circumstances, Husband concludes, the judge should have automatically disqualified himself when the conference ended without settlement.

We disagree. This Court very recently expressed its concern about the participation in pre-trial settlement negotiations of trial judges who are to be triers of fact. In Shields v. Thunem (Mont. 1986), 716 P.2d 217, 219, 43 St.Rep. 518, 521, we held:

> [W]here a judge is to be the trier of fact, and he participates in pre-trial settlement negotiations which subsequently fail, he should, upon request, disqualify himself from sitting as the trial judge. (Emphasis added.)

Shields is clear that before this Court will find a district court in error for failure to remove itself in such a situation, a request for disqualification must be made. We see no reason to alter that rule in this case, especially in the absence of a record of the pre-trial conference. If the actions of the District Court judge were truly as egregious as Husband now claims, his obvious remedy would have been to move to have the judge disqualify himself. It is no defense that Husband was excused from requesting disqualification since the Shields decision came down after the trial in this case. We find no error in this issue.

III

Husband next challenges the District Court's grant of Wife's motions in limine, excluding certain evidence from trial. These motions were in response to the Husband's attempt to introduce as evidence Wife's inability to balance

10

her checkbook and an incident while Wife was employed by the K-Mart Corporation in 1981 in which she was accused of theft. The District Court granted Wife's motions on the grounds that this evidence was not relevant to the custody determination. See Rule 402, M.R.Evid.

In determining the relevancy of the evidence, a trial court is not guided by any fixed rules. Rather, the nature of the evidence and the circumstances of the particular case must control. The trial court's determination of relevancy is subject to review only in the case of manifest abuse. Preston v. McDonnell (Mont. 1983), 659 P.2d 276, 277, 40 St.Rep. 297, 299.

Here, the District Court did not abuse its discretion. Case law in this state has established a line of precedent moving away from the policy of admitting evidence of misconduct which did not effect the relationship of a custodian with the child. Solie v. Solie (1977), 172 Mont. 132, 136-37, 561 P.2d 443, 446; Foss v. Leifer (1976), 170 Mont. 97, 102-03, 550 P.2d 1309, 1312. We hold the District Court did not err by refusing admission of Wife's alleged theft and accounting difficulties.

IV

Next, Husband contests the District Court's award of attorney's fees to K-Mart. In an effort to investigate more fully the circumstances surrounding Wife's alleged theft, Husband had a subpoena duces tecum served upon K-Mart commanding that its personnel manager appear for testimony with all relevant records. Wife, in addition to filing her motion in limine seeking to exclude this evidence, also sent a letter to K-Mart stating that production of any documents

11

or testimony without a court order might well constitute a violation of Wife's right to privacy or a breach of the employer's implied duty of good faith and fair dealing.

K-Mart ultimately filed with the District Court, pursuant to Rule 26(c), M.R.Civ.P., a motion for protective order, seeking guidance from the court as to Husband's requested discovery. During a telephonic conference held on January 14, 1986, the parties' attorneys stipulated that K-Mart's attorney could orally summarize the information he obtained in an interview with the proposed deponent. After hearing the summary, the court concluded that the issue was not relevant, granted Wife's motion in limine, and refused to allow Husband to make further offer of proof on this issue. Subsequently, on January 31, 1986, the District Court, pursuant to Rule 37(a)(4), M.R.Civ.P., granted K-Mart's motion for attorney's fees.

Rule 37(a)(4), M.R.Civ.P., provides that:

> If the motion is granted, the court shall . . . require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees . . .

In this case, the District Court never actually granted K-Mart's motion for protective order. As noted, the court disposed of this line of discovery when it granted Wife's motion in limine. Nonetheless, the court by granting the Wife's motion in limine in effect granted K-Mart's motion for a protective order. K-Mart is therefore entitled to its attorney's fees under Rule 37(a)(4), M.R.Civ.P.

V

Finally, Husband contests the District Court's award of attorney's fees and costs to Wife. The District Court found that Wife's reasonable attorney's fees amounted to $10,880 and Husband's, $4,200. The court further found that Wife was without means to pay for her attorney's fees, so it listed both Husband's and Wife's attorney's fees as liabilities to be paid out of the marital estate. The court then subtracted these and all other liabilities from the marital estate to find a net marital estate. Finally, the court awarded Husband the marital estate, but required him to pay all liabilities and to pay the Wife one-half the net.

The effect of the court's apportionment of the marital assets and liabilities was to have the Husband pay one-half of Wife's attorney's fees and vice versa. Because each party is to receive one-half the net marital estate, each liability subtracted from the gross marital estate costs each party one-half the amount of each liability.

The disposition of a marital estate--in which the parties' attorney's fees were included--is largely within the discretion of the District Court. See In re the Marriage of Morse (Mont. 1985), 708 P.2d 559, 560, 42 St.Rep. 1235, 1237. This Court will not disturb the decision of the District Court absent a clear abuse of discretion. We do not find that the District Court committed clear abuse of discretion in its disposition of the marital estate.

This, however, does not end our discussion. Husband argues that even if the parties' attorney's fees were properly included within the marital estate, Wife's claim for attorney's fees were not proven to be necessary or reasonable. Reading Wife's testimony in whole, we are not persuaded that the District Court erred in its finding that

13

Wife had inadequate means of paying her attorney's fees. And as for the reasonableness of the amount, we note that Husband chose neither to object nor to cross examine either Wife as she testified on this matter at trial or Wife's counsel during a post-trial conference during which this issue was discussed and no record was made thereof. Where Husband was a participant in the conference and did not object and the record is not perfected, we will not hold a District Court in error. In re the Marriage of Purkett (Mont. 1986), 721 P.2d 349, 351, 43 St.Rep. 1217, 1219.

Finally, the District Court ordered Husband to pay Wife's court costs of $475.64 and the fee of Wife's accountant totalling $75. We find no error in the award of the accountant's fees; Mr. Koeoke testified as to his statement for professional services. Again the record has not been perfected as to the court costs. For the same reasons that we uphold the court's grant of attorney's fees, we uphold the award of costs.

Affirmed.

Justice

We concur:

Justices