FILED

February 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0160

DA 14-0160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 57

IN RE THE PARENTING OF
M.C.,

     A Minor Child.

MITCHELL T. COLLIE,

     Petitioner and Appellee,

  and

BRITTANY PIRKLE,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DR 13-252
                 Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Marybeth M. Sampsel, Measure, Sampsel, Sullivan & O'Brien, P.C.,
                Kalispell, Montana

        For Appellee:

                Patrick G. Sandefur, Sandefur Law Offices, P.C, Missoula, Montana

                          Submitted on Briefs: January 28, 2015
                                Decided:  February 24, 2015

Filed:

_____
                        Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Brittany Pirkle appeals from a parenting plan ordered by the Fourth Judicial District Court, Missoula County. We affirm.

¶2 The issue presented for review is whether the District Court violated Pirkle's fundamental right to travel by ordering that the parties' minor child should reside in Montana.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 M.C. is the minor child of Pirkle and Mitchell Collie. M.C. was born in Missoula in 2012 and resided there with Pirkle and Collie until March 19, 2013. During that time, Collie worked as a detailer at Bretz RV, and Pirkle cared for M.C. in the home. Pirkle applied for part-time jobs, but could not find anything she believed was compatible with M.C.'s child care needs. In addition to Collie's income, the couple received food stamps and Medicaid. They also received gifts of money and baby items from each of their families. The couple never married. Collie worked long hours, but believed he was able to establish a positive relationship with M.C. Pirkle acted as M.C.'s primary caregiver and believed Collie did not spend enough time bonding with the child.

¶4 Pirkle is from Ohio, but moved to Missoula to attend the University of Montana, where she obtained a degree in wildlife biology. On March 19, 2013, Pirkle and M.C. traveled to Ohio to attend the wedding of Pirkle's sister. They were expected to return to Missoula in one week. Shortly before they were supposed to return, Pirkle told Collie that her mother wanted them to extend their stay by another week. A few days later, Pirkle told Collie that there had been a problem with the payment on her return ticket,

2

and she and M.C. would need to stay until she could afford another ticket. Eventually, Pirkle and M.C. were booked on a flight to Spokane, Washington, and Collie made plans to travel to Spokane to pick them up. Pirkle told Collie they were unable to travel because M.C. was sick, and Pirkle's mother informed Collie that she had cancelled the ticket. By that time, Pirkle and M.C. had been in Ohio for a month. On April 26, 2013, Pirkle told Collie that she intended to remain in Ohio with M.C.

¶5 Collie petitioned the Missoula County District Court for establishment of a parenting plan, and proposed that he should become M.C.'s primary caregiver. Pirkle responded, arguing that Collie was ill-prepared to take on a primary caregiver role. Pirkle stated that she had an extensive family support network in Ohio and had been able to obtain employment. She was residing with her parents and brother and believed this environment was healthy and positive for M.C. On May 23, 2013, Collie moved the District Court to order Pirkle to return M.C. to Montana. The matter was referred to a Standing Master, who ordered Pirkle to return to Montana with M.C. no later than July 22, 2013. Collie was directed to purchase a plane ticket for Pirkle and to vacate the home formerly shared by the parties so Pirkle would have a place to stay while in Montana. Collie purchased the plane ticket. Pirkle did not return to Montana with M.C. as ordered, and could not be contacted for a telephone hearing on July 25, 2013.

¶6 Pirkle initiated a separate parenting plan action in an Ohio court and moved the District Court to cede jurisdiction to Ohio, claiming Montana was an inconvenient forum. After an evidentiary hearing, the Ohio court dismissed the action for lack of jurisdiction

pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The District Court denied Pirkle's motion to cede jurisdiction to Ohio.

¶7 A hearing to establish a parenting plan was held in the District Court on February 6 and 7, 2014. Pirkle proposed a parenting plan that would allow her to reside in Ohio as M.C.'s primary caregiver. She proposed that the parties share the travel costs associated with visitation between M.C. and Collie. Collie stated that if Pirkle moved back to Montana, he would not object to Pirkle acting as M.C.'s primary caregiver. However, if Pirkle decided to stay in Ohio, Collie believed M.C. should live with him in Montana.

¶8 The District Court issued its Findings of Fact, Conclusions of Law, and Order on February 21, 2014. The District Court considered the best interest of the child factors listed in § 40-4-212, MCA, and found that most of the factors did not strongly favor either parent. The District Court did not enter specific findings with regard to § 40-4-212(1)(l), MCA, addressing "frequent and continuing contact with both parents." The District Court did find, however, that Pirkle's testimony that she intended to return to Montana when she flew to Ohio on March 19, 2013, was not credible. The District Court also found that Collie's contact with M.C. had been limited to Skype visits for nearly a year, which the District Court considered insufficient to foster a bond with a child of such a young age. The District Court further found that Pirkle and her family made no effort to tell M.C. that Collie is her father, did not show M.C. pictures of Collie, and did not send pictures of M.C. to Collie. The District Court considered Pirkle's reasons for these failings "simply unbelievable." The District Court found "there have been no active

4

efforts on the part of the Mother to foster ties between Father and daughter." The District Court stated:

> Although the Mother has a constitutional right to travel and therefore relocate herself, this right does not outweigh the Father's right to have regular and ongoing parental contact with his daughter, and the child's right to a relationship with her Father. The Court finds that it is in the best interest of the minor child that she be returned to the State of Montana so that she can have ongoing contact and a relationship with her Father. Mother must therefore make a choice, continue to live in northeast Ohio with her family, or move back to Montana. The child must live here.

¶9 The District Court then ordered the parties to advise the court of Pirkle's intended residence. If Pirkle chose to live in Montana, the parties were directed to submit proposed parenting plans naming Pirkle as M.C.'s primary caregiver and providing visitation for Collie. If Pirkle chose to live in Ohio, the parties were directed to submit proposed parenting plans naming Collie as M.C.'s primary caregiver and providing visitation for Pirkle in accordance with guidelines for long-distance parenting. Pirkle filed this appeal.

## STANDARDS OF REVIEW

¶10 This Court reviews the findings of fact supporting a district court's parenting plan to determine whether they are clearly erroneous. *Woerner v. Woerner*, 2014 MT 134, ¶ 11, 375 Mont. 153, 325 P.3d 1244. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record leaves us firmly convinced that the district court made a mistake. *In re Custody of D.M.G.*, 1998 MT 1, ¶ 10, 287 Mont. 120, 951 P.2d 1377. We review conclusions of law for correctness. *Guffin v. Plaisted-Harman*,

5

2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888 (*Guffin II*). "Trial courts have broad discretion when considering the parenting of a child," and we will not disturb the court's decision absent a clear abuse of that discretion. *Woerner*, ¶ 12. A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *Guffin II*, ¶ 20.

**DISCUSSION**

¶11   *Whether the District Court violated Pirkle's fundamental right to travel by ordering that the parties' minor child should reside in Montana.*

¶12   The freedom to travel throughout the United States, and "to migrate, resettle, find a new job, and start a new life," has long been recognized as a fundamental constitutional right. *Shapiro v. Thompson*, 394 U.S. 618, 629-31, 89 S. Ct. 1322, 1328-29 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651, 671, 94 S. Ct. 1347, 1360 (1974). The exercise of this fundamental right may be restricted only by a compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 339, 92 S. Ct. 995, 1001 (1972); *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280 (1986).

¶13   Such a compelling state interest may be found in "furtherance of the best interests of a child, by assuring the maximum opportunities for the love, guidance and support of both natural parents . . . ." *Cole*, 224 Mont. at 213, 729 P.2d at 1280. A custodial parent "is entitled, to the greatest possible extent, to the same freedom to seek a better life for himself or herself and the children as enjoyed by the noncustodial parent." *Cole*, 224 Mont. at 213, 729 P.2d at 1280. This freedom is qualified, however, by "the state's interest in protecting the best interests of the child and the competing interests of the

6

noncustodial parent." *Cole*, 224 Mont. at 213, 729 P.2d at 1280. Thus, in cases implicating a parent's exercise of his or her fundamental right to travel, "it is the court's task to attempt to reconcile the interests of both parents with the best interests of the child." *Cole*, 224 Mont. at 213, 729 P.2d at 1280.

¶14 A restriction on a parent's fundamental right to travel must be imposed cautiously and only where there is sufficient proof that the restriction is in the best interest of the child. *D.M.G.*, ¶ 22; *Cole*, 224 Mont. at 213, 729 P.2d at 1281. The parent seeking the restriction must provide "case-specific proof" that the restriction is in the child's best interest: that is, "legitimate, case-specific reasons and evidence pertaining to the particular child," rather than "general discussion" about the effects of relocation on children of separation or divorce. *D.M.G.*, ¶¶ 24, 30.

¶15 A parenting plan is to be determined "in accordance with the best interest of the child." Section 40-4-212(1), MCA. In determining the best interest of the child, a court is to consider "all relevant parenting facts, which may include but are not limited to" the following:

> (a) the wishes of the child's parent or parents;
> (b) the wishes of the child;
> (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;
> (d) the child's adjustment to home, school, and community;
> (e) the mental and physical health of all individuals involved;
> (f) physical abuse or threat of physical abuse by one parent against the other parent or the child;
> (g) chemical dependency . . . or chemical abuse on the part of either parent;
> (h) continuity and stability of care;
> (i) developmental needs of the child;

(j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests;

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. . . ;

(m) adverse effects on the child resulting from continuous and vexatious parenting plan amendment actions.

Section 40-4-212(1), MCA. While a court must consider these factors, it is not required to enter specific findings related to each. *Czapranski v. Czapranski*, 2003 MT 14, ¶ 11, 314 Mont. 55, 63 P.3d 499.

¶16 In *D.M.G.*, as here, the district court was required to balance "the statutorily required best interests of the child, which are most appropriately served by consistent and continuing contact with both natural parents," against the mother's fundamental right to travel to and establish a home in another state. *D.M.G.*, ¶ 21. In that case, where the mother had moved with the children to Salem, Oregon, we observed that "there [was] virtually no evidence that would lead one to the firm conclusion that the best interests of these children would be most appropriately served by their living in Helena as opposed to Salem or in Salem as opposed to Helena." *D.M.G.*, ¶ 26. Both parents were fit; both had the support of extended family in their respective communities; both had promising careers; the father remained involved in the children's lives to the fullest extent possible; and the mother had not interfered in his efforts. *D.M.G.*, ¶ 26. Because the best-interest factors appeared relatively balanced in favor of each parent, and because the father had

produced only "general, non-case-specific proof" that the interstate move was not in the children's best interests, we held that interference with the mother's right to travel was not justified by a compelling state interest. *D.M.G.*, ¶ 31.

¶17 In *Guffin II*, we considered a parent's fundamental right to travel in the context of an action to amend an existing parenting plan. We clarified that a district court is "flatly prohibited" from employing "any presumption that the moving parent is acting against a child's best interests simply because he or she changes her residence in a manner that significantly affects the child's contact with the other parent." *Guffin II*, ¶ 30. We directed the district court in that case to "focus solely on the best interests of the children." *Guffin II*, ¶ 33. Applying § 40-4-219, MCA, governing the amendment of parenting plans, we further held that absent a finding that "[mother's] decision to move exemplifies a 'willful and consistent' attempt to frustrate or deny [father] contact with the children, her decision to move cannot be held against her, nor can it be considered as being against the best interests of the children." *Guffin II*, ¶ 33.

¶18 In the present case, similar to the findings in *D.M.G.*, the District Court found that the factors listed in § 40-4-212(1), MCA, were balanced fairly evenly in favor of each parent. The District Court found that Pirkle wished to have the child reside with her in Ohio, while Collie wished to have the child reside with him in Montana, and that the child was too young to express her own wishes. Section 40-4-212(1)(a), (b), MCA. The District Court found that the child had established close relationships with Collie's family while living in Montana and with Pirkle's family while living in Ohio, and that the child had been well-adjusted to her home in Montana before moving to Ohio. Section

40-4-212(1)(c), (d), MCA. The District Court found that Pirkle, Collie, and M.C. were all in good health, and that there were no allegations of physical abuse or chemical dependency on the part of either parent. Section 40-4-212(1)(e), (f), (g), MCA. The District Court found that both parents would be able to provide stability and continuity of care in their respective homes. Section 40-4-212(1)(h), MCA. The District Court found that the child's developmental needs could be met equally in either community, as both provided good schools and amenities. Section 40-4-212(1)(i), MCA. The District Court found that Collie had not failed to pay birth-related costs, that he had provided the primary financial support for the child from her birth until her move to Ohio, and that he had offered to pay child support after the move to Ohio, which Pirkle rejected. Section 40-4-212(1)(j), (k), MCA.

¶19 The District Court did not enter a specific finding with respect to the child's frequent and continuing contact with both parents. Section 40-4-212(1)(l), MCA. The District Court did, however, enter several findings clearly pertaining to this factor. The District Court found that Pirkle refused to bring the child to Montana when ordered by the court to do so, despite Collie agreeing to pay the cost of travel. The District Court found that Pirkle made no efforts to foster a relationship between Collie and the child, and did not explain to M.C. that Collie is her father or encourage her to talk to him. The District Court found that Pirkle had no pictures of Collie in her home and had not given any pictures of M.C. to Collie. The District Court concluded its findings by saying, "despite the Mother's claim that she wants the Father to have a relationship with his

10

daughter, there have been no active efforts on the part of the Mother to foster ties between Father and daughter."

¶20 The findings here are in significant contrast to the circumstances present in *D.M.G.*, ¶ 26, where the district court found that "[father] visits the children to the extent he is able and remains involved in their lives; and [mother] has not interfered in his efforts." Here, the District Court found that Pirkle had significantly interfered in Collie's ability to remain involved in M.C.'s life after her move to Ohio by not exchanging photos, not talking to M.C. about her father, and refusing to travel to Montana with M.C. even when such travel was court-ordered and paid for. This is the kind of "case-specific proof" we required in *D.M.G.*, ¶ 30. Although in this case we address an initial parenting plan, rather than the amendment of a parenting plan, we also find instructive our statements in *Guffin II*, ¶ 33, that a parent's decision to move may be considered against the best interests of a child if the parent's decision "exemplifies a 'willful and consistent' attempt to frustrate or deny" contact between the child and his or her other parent. The District Court found such attempts present here. The record before the District Court demonstrated that Collie was the parent most likely to facilitate frequent and continuing contact with the other parent. It was therefore appropriate for the District Court to order that, if Collie and Pirkle remained in a long-distance parenting situation, it would be in M.C.'s best interests for Collie to become the primary residential parent. *See In re Chamberlin*, 2011 MT 253, ¶ 24, 362 Mont. 226, 262 P.3d 1097.

## CONCLUSION

¶21 The state's compelling interest in protecting M.C.'s best interests, which are served by frequent and continuing contact with both parents, was sufficient to justify the District Court's restriction on Pirkle's fundamental right to travel. *See Cole*, 224 Mont. at 213, 729 P.2d at 1280. The parenting plan is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA