FILED

April 20 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0542

DA 15-0542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 93

IN RE THE PARENTING OF C.J.:

MATTHEW F. TUBAUGH,

      Petitioner and Appellant,

  v.

STEVI JACKSON,

      Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District,<br>In and For the County of Park, Cause No. DR-13-60<br>Honorable Brenda Gilbert, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jason Armstrong, Law Office of Jason Armstrong, P.C., Bozeman, Montana

      For Appellee:

            Christopher J. Gillette, Law Office of Christopher J. Gillette, PC, Bozeman, Montana

Submitted on Briefs: March 30, 2016

Decided: April 20, 2016

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Matthew Tubaugh appeals the findings of fact, conclusions of law, and order of the Sixth Judicial District Court, Park County, adopting a final parenting plan that provides Stevi Jackson with primary custody of Matthew's and Stevi's son, C.J., and allows Stevi to relocate to Vermont with C.J. Matthew alleges several errors in the District Court's parenting determination. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Matthew and Stevi first met in or about 2004 and, although they had an "on and off" relationship for several years, the parties never lived together. C.J. was born in August 2012.

¶3 At the time of the District Court proceedings, Stevi resided in Belgrade, Montana, with C.J., her husband Tom, and the couple's minor child. She has a degree in early childhood education and had been employed by Head Start in Bozeman since 2007. Stevi began her Head Start employment as an assistant teacher and eventually progressed to serve as both the site supervisor and the technology manager. In July 2015, she was offered a job as the Children's Service Manager for a Head Start program in Newport, Vermont.

¶4 Matthew resides in Livingston with his domestic partner, who was pregnant with his child at the time of the final parenting plan hearing. Matthew has a daughter, P.J., from a previous relationship. He has part-time custody of P.J. Matthew served in the armed forces, worked as a police officer, and at the time of the hearing was working on a ranch.

¶5 Although the parties dispute whether Matthew was given an opportunity to spend time with C.J. during the first fifteen months of his life, it is undisputed that Matthew saw C.J. only once during that time period. Stevi testified that Matthew did not provide her with any financial assistance during that time; Matthew did not offer any evidence to the contrary. In July 2014, the District Court ordered Matthew to pay $156 per month in child support. A Child Support Enforcement Division debt computation worksheet admitted at the hearing showed that Matthew was current on child support payments as of June 2015.

¶6 Prior to C.J.'s birth, Matthew sent Stevi an email stating that "a paternity test will be required" because he questioned whether or not he was C.J.'s father. After C.J.'s birth, Matthew continued to contest paternity before eventually filing a paternity action.[1] Approximately six months after the court ordered paternity testing, Matthew took a paternity test. It confirmed that he was C.J.'s father. On June 14, 2013, after receiving the paternity test results, Matthew filed a petition for establishment of an interim parenting plan. While Matthew's petition was pending, he and Stevi arranged for supervised visits between himself and C.J at Hearts & Homes in Bozeman. Stevi stopped the arrangement after three visits because she felt C.J. was demonstrating "very distressed behavior" during the visits.

¶7 The District Court held a hearing on Matthew's petition for an interim parenting plan on February 3, 2014. Following the hearing, the parties attempted to reconcile their relationship and arranged parenting time on their own. The parties' attempt at

---

[1] The District Court took judicial notice of the paternity action.

reconciliation eventually failed and, in May 2014, Matthew filed a petition for an "emergency de facto" parenting plan.

¶8      In July 2014, the District Court issued an order that allowed Matthew two visits per week with C.J. and required both parties to attend counseling sessions. The court also appointed counselor Chantelle Plauche to assist in reunifying Matthew and C.J. The order required the parties to follow Plauche's "recommendations for improving the relationship and parental contact between Matthew and [C.J.]."

¶9      Plauche worked with the parties for a year and testified that Matthew's relationship with C.J. improved. Due to the improving relationship, Plauche recommended a number of times that Matthew incrementally increase his parenting time with C.J., and Matthew's parenting time did increase. Plauche eventually recommended that Matthew be allowed to have C.J. for three days and two nights in a row per week.

¶10     On July 14, 2015, Stevi filed a proposed final parenting plan and a notice of intent to relocate. Her proposed plan called for C.J. to reside with her in Vermont during the school year and with Matthew in Livingston during the summer. Matthew also filed a proposed parenting plan in which C.J. would live with him during the school year and with Stevi in Vermont during the summer.

¶11     On August 18, 2015, the District Court held a hearing on Stevi's notice of intent to relocate and the parties' respective parenting plans. Stevi, Matthew, and Plauche testified at the hearing. Matthew also called Katherine McLaughlin as an expert witness to testify generally regarding childhood development. On August 27, 2015, the District Court issued its findings of fact, conclusions of law, and order regarding the final parenting

4

plan.  The court's order largely adopted Stevi's proposed parenting plan.  Matthew appeals.

**STANDARD OF REVIEW**

¶12   We review a district court's findings of fact supporting a parenting plan to determine whether they are clearly erroneous.  *In re the Parenting of M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569.  A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake.  *M.C.*, ¶ 10.  We review a district court's conclusions of law to determine if they are correct.  *M.C.*, ¶ 10.

¶13   A district court has "broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision."  *In re the Marriage of Woerner*, 2014 MT 134, ¶ 12, 375 Mont. 153, 325 P.3d 1244 (quoting *In re Marriage of Crowley*, 2014 MT 42, ¶ 44, 374 Mont. 48, 318 P.3d 1031).  Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *Woerner*, ¶ 12.  A district court abuses its discretion if it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice.  *Woerner*, ¶ 12.

**DISCUSSION**

¶14   While district courts "have broad discretion when considering the parenting of a child," *Woerner*, ¶ 12, a district court must "determine the parenting plan in accordance

with the best interest of the child," § 40-4-212(1), MCA; *Woerner*, ¶ 13. District courts are directed to consider "all relevant parenting factors" in making these determinations. Section 40-4-212(1), MCA. The statute's non-exhaustive list of factors includes:

(a) the wishes of the child's parent or parents;

(b) the wishes of the child;

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

(d) the child's adjustment to home, school, and community;

(e) the mental and physical health of all individuals involved;

(f) physical abuse or threat of physical abuse by one parent against the other parent or the child;

(g) chemical dependency . . . or chemical abuse on the part of either parent;

(h) continuity and stability of care;

(i) developmental needs of the child;

(j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests;

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. . . . ;

(m) adverse effects on the child resulting from continuous and vexatious parenting plan amendment actions.

Section 40-4-212(1), MCA. Although "[w]e have encouraged district courts to make specific findings on each relevant statutory factor," we require only "that the district court make findings sufficient for this court to determine whether the court considered the statutory facts and made its ruling on the basis of the child's best interests." *Woerner*, ¶ 15.

¶15 The District Court found that C.J. is attached primarily to Stevi because she "has parented him much more of the time, has arranged for his medical and dental care, has arranged for his play dates and other social interaction, and has provided for his day to day needs." The court found further that Stevi did not prevent Matthew from spending time with C.J. during the first fifteen months of C.J.'s life. The court noted that Matthew "did not present any evidence that he was actually requesting and pursuing parenting time with [C.J.] in any significant fashion" during that time period. Although the court determined that C.J. "has a secure bond with [Matthew]," it decided that "Stevi should be entitled to relocate to Newport, Vermont[,] where she has the opportunity to pursue her career in a setting that has more room for advancement [and] more financial opportunity." The court found that the final parenting plan "will deepen" C.J.'s bond with Matthew by virtue of its longer periods of uninterrupted parenting time, "involve far fewer parenting exchanges and less exposure to conflict for [C.J.] than what he is experiencing under the current schedule," and "involve opportunities for frequent telephone and Skyping or similar communications."

¶16 The court next addressed the competing constitutional rights implicated by the proposed parenting plans—Stevi's right to travel and Matthew's right to parent—before

7

analyzing whether it would be in the best interest of C.J. to move to Vermont with Stevi or to remain in Livingston with Matthew. The court thoroughly considered and made specific findings on each of the best interest factors set forth in § 40-4-212, MCA. Based upon its consideration of the factors, the court concluded that it would be in C.J.'s best interest to adopt a final parenting plan that allowed Stevi to maintain primary custody of C.J. and relocate to Vermont.

¶17 Matthew first asserts that the District Court's finding that Stevi did not interfere with his relationship with C.J. is clearly erroneous. Matthew alleges that the evidence demonstrates that Stevi "willfully and consistently interfered with [Matthew's] parenting time." Matthew contends that the "reason that C.J. is primarily attached to [Stevi] is because she has consistently thwarted and interfered with [Matthew's] ability to exercise parenting time of any kind[,] not just meaningful parenting time." Consequently, Matthew asserts, the District Court's finding adversely impacted its consideration of several of the best interest factors under § 40-4-212, MCA.

¶18 The District Court's finding provides:

33. Stevi is the parent to whom [C.J.] is primarily attached. She parented him without contact from [Matthew] during the first fifteen months of [C.J.'s] life. The lack of contact between [C.J.] and [Matthew] during that time frame was not due to interference or blocking the contact on Stevi's part.

The District Court relied on evidence showing that for the first eight months of C.J.'s life, Matthew contested whether he was C.J.'s father. Although Matthew was ordered to take a paternity test on October 31, 2012, he did not take the test until April 29, 2013. Moreover, Matthew admitted that Stevi offered to allow him to visit C.J. so long as she

was present, but testified that he refused the opportunity because he did not want Stevi present during his visits with C.J. The parties' testimony substantiates the District Court's view that although Stevi has been C.J.'s primary parent, she has made efforts to have Matthew involved in C.J.'s life.

¶19 It is the District Court's function to determine "the credibility of the witnesses and the weight assigned to their respective testimony." *In re the Parenting of N.S.*, 2011 MT 98, ¶ 25, 360 Mont. 288, 253 P.3d 863. "Whether we would have reached the same decision as the trial court is not the standard under which we review a court's order for an abuse of discretion." *Woerner*, ¶ 29 (citing *In re Marriage of Lockhead*, 2013 MT 368, ¶ 12, 373 Mont. 120, 314 P.3d 915). Rather, "[w]e review whether substantial evidence in the record supports the court's findings regardless of whether the evidence could support a different outcome as well." *Woerner*, ¶ 29 (citing *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175). Based on our review of the record, we conclude that the District Court did not misapprehend the effect of the evidence or clearly make a mistake in finding that Stevi did not interfere with Matthew's relationship with C.J. The District Court's finding of fact is supported by substantial evidence and is not clearly erroneous. Accordingly, we disagree with Matthew's contention that the District Court's finding led to an incorrect application of the best interest factors under § 40-4-212, MCA.

¶20 Next, Matthew alleges that the District Court misstated the law when it concluded that Matthew "bears a 'heavy burden' of establishing that the proposed travel restriction is consistent with the best interests" of C.J. Matthew contends that the burden of proof

9

for establishing a travel restriction is simply the best interest of the child standard. Therefore, Matthew claims, the District Court incorrectly required Matthew "to show that not moving was in C.J.'s best interest." Matthew claims again that the District Court's finding that Stevi did not interfere with his relationship with C.J. is not supported by substantial evidence. Matthew cites our holding in *M.C.* that "a parent's decision to move may be considered against the best interests of a child if the parent's decision exemplifies a willful and consistent attempt to frustrate or deny contact between the child and his or her other parent." *M.C.*, ¶ 20 (citation and internal quotations omitted). Finally, Matthew asserts that the court incorrectly elevated Stevi's right to travel over C.J.'s best interests.

¶21 The right to travel "has long been recognized as a fundamental constitutional right." *M.C.*, ¶ 12 (citing *Shapiro v. Thompson*, 394 U.S. 618, 629-31, 89 S. Ct. 1322, 1328-29 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651, 671, 94 S. Ct. 1347, 1360 (1974)). Accordingly, the right to travel "may be restricted only by a compelling state interest." *M.C.*, ¶ 12 (citing *Dunn v. Blumstein*, 405 U.S. 330, 339, 92 S. Ct. 995, 1001 (1972); *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280 (1986)). Advancing the best interest of a child is a compelling state interest. *M.C.*, ¶ 13 (citing *Cole*, 224 Mont. at 213, 729 P.2d at 1280). Therefore, "in cases implicating a parent's exercise of his or her fundamental right to travel, 'it is the court's task to attempt to reconcile the interests of both parents with the best interests of the child.'" *M.C.*, ¶ 13 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280). In such cases, we have cautioned:

10

A restriction on a parent's fundamental right to travel must be imposed cautiously and only when there is sufficient proof that the restriction is in the best interest of the child. The parent seeking the restriction must provide case-specific proof that the restriction is in the child's best interest: that is, legitimate, case-specific reasons and evidence pertaining to the particular child, rather than general discussion about the effects of relocation on children of separation or divorce.

*M.C.*, ¶ 14 (internal citations and quotations omitted).

¶22 Our precedent makes clear that Matthew—as the parent seeking to restrict Stevi's fundamental right to travel—bears the burden of proving that the restriction is in C.J.'s best interest. Here, the District Court recognized correctly that Matthew bore such a burden. The court recognized further its responsibility to consider C.J.'s best interests and concluded, "Ultimately, in balancing the respective and competing constitutional rights of the parties and in determining the terms and parameters of any parenting plan, the Court is bound to consider the best interest standards of the child as contemplated in § 40-4-212, MCA." The court then proceeded to consider, and make specific findings regarding, each of the best interest factors set forth in § 40-4-212, MCA. We conclude that the District Court correctly held Matthew to the burden of showing that the travel restriction was not in C.J.'s best interest, and that it correctly applied the best interest of the child standard.

¶23 As discussed above, there is substantial evidence supporting the District Court's finding that Stevi did not interfere with Matthew's relationship with C.J. Aside from his interference argument, Matthew has offered no other "legitimate, case-specific reasons and evidence" supporting his contention that restricting Stevi's right to travel is in the

best interest of C.J. *M.C.*, ¶ 14. Accordingly, we conclude that the District Court acted within its broad discretion in allowing C.J. to relocate to Vermont with Stevi.

¶24 For the foregoing reasons, we conclude that the District Court's findings of fact were not clearly erroneous and its conclusions of law were correct. We therefore will not disturb the District Court's decision regarding C.J.'s parenting plan.

## CONCLUSION

¶25 The District Court's order adopting the final parenting plan is affirmed.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA