FILED

04/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0277

DA 20-0277

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 89N

IN RE THE MARRIAGE OF:

BRANDY J. PERSOMA,

     Petitioner and Appellant,

  and

TYLER S. PERSOMA,

     Respondent and Appellee.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                  In and For the County of Musselshell, Cause No. DR-16-02
                  Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brandy J. Persoma, Self-Represented, Billings, Montana

      For Appellee:

          Desi Seal, Hendrickson Law Firm, P.C., Billings, Montana

                         Submitted on Briefs:  March 3, 2021

                                Decided:  April 13, 2021

Filed:

                         _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Brandy J. Persoma (Mother) appeals a final order from the Fourteenth Judicial District Court, Musselshell County, dissolving the marriage between her and Tyler S. Persoma (Father) and determining the final parenting plan regarding the care of their daughter, B.J.P. We affirm.

¶3    Mother and Father were married on February 18, 2012. They separated in February 2016 and their divorce was finalized on April 16, 2020. Mother and Father have one child together, B.J.P. Father adopted Mother's three teenage sons (N.J.P., C.J.P., and T.J.P.) from a previous relationship, in September 2013. Upon their separation, Father filed an ex parte motion for an interim parenting plan on the basis that the parties' son, C.J.P., posed an imminent and severe threat to B.J.P.'s health and safety. The court, finding there was an emergency, granted Father's proposed interim plan in February 2016. The 2016 interim plan concluded Mother would serve as the primary residential parent of the three sons and Father would be the primary residential parent for B.J.P. Mother had scheduled-parenting time with B.J.P. on Saturdays and Sundays, and at other times when both parents could agree. The court also ordered no contact between the three sons and B.J.P., and no overnight visitations so long as the three sons were

2

present at Mother's residence. The parties subsequently agreed to Tuesday and Thursday visits.

¶4     The court conducted show cause hearings on September 15 and 27, 2016. The court issued an order on January 19, 2017, which essentially affirmed the details of the 2016 interim plan. The District Court noted that B.J.P. became accustomed to Father's routine and surroundings, and that Father primarily cared for B.J.P. The court held that a drastic change—i.e., the 50/50 parenting plan Mother suggested—would have severe consequences and be contrary to B.J.P.'s best interests. The District Court cautioned that Mother was not to allow unsupervised contact between B.J.P. and C.J.P., and that continued unsupervised visits between her and B.J.P. would be granted so long as that condition was met. Father was also cautioned that any interference with Mother's visitation would be met with consequences, including transferring physical custody of B.J.P. to Mother. Additionally, in the January 2017 order, the court indicated that all three sons displayed varying levels of behavioral and psychological problems. In particular, C.J.P. had been diagnosed as sexually reactive by various counselors and had reportedly engaged in sexually inappropriate behavior since 2010. However, neither counselor indicated that he posed a risk to B.J.P.

¶5     On June 18, 2018, the parties notified the court of an investigation into allegations of abuse and neglect on B.J.P., conducted by the Musselshell County Sheriff's Department and the Montana Department of Public Health and Human Services, Child and Family Services Division. In response, the court granted the parties' request for continuance. On July 25, 2018, the State filed petitions in youth court based on

3

B.J.P.'s allegations of physical and sexual abuse by the three sons during Mother's parenting time. The following day, and in response to B.J.P.'s allegations of physical and sexual abuse, Father filed an ex parte motion for another interim parenting plan requesting Mother's parenting time be supervised due to her failure to ensure B.J.P.'s safety, particularly around C.J.P. The court granted the motion and restricted Mother's visitation to supervised visitation only.[1] A final dissolution trial was held in August 2018.

¶6 In October 2018, Father filed a motion to supplement the record with evidence pertaining to the distribution of the parties' marital assets and liabilities. In December 2018, Musselshell County filed a motion to dismiss the youth court petitions and criminal charges against each of the parties' boys. In February 2018, the court granted the County Attorney's motion to dismiss without prejudice. On April 16, 2020, the District Court issued its Final Decree of Dissolution of Marriage and Final Parenting Plan. The court dissolved the parties' marriage and ordered the parenting of the three sons was to remain in accordance with the January 2017 order. The District Court held the continuity and stability of care were important considerations in determining the best interests of B.J.P.; thus, it designated Father as the primary residential parent and granted Mother unsupervised parenting time of B.J.P. every first and third weekend. The final order also

---

[1] The court indicated there were several problems with the allegations made by B.J.P. At the time of trial, neither party submitted any competent evidence regarding the alleged assault by the boys. B.J.P. did not testify and no one moved the court for admission of the hearsay statements. B.J.P.'s grandmother and the detective who interviewed B.J.P. did not testify. Thus, the court noted it was only left with the information contained in the County Attorney's affidavit of probable cause.

mandated that Mother must ensure no unsupervised contact between B.J.P. and C.J.P., but indicated that the sexual allegations had not been proven. The District Court awarded both Father and Mother their respective assets and equally distributed their liabilities.

¶7 Mother appeals, asserting the court erred in its consideration of the best interests of B.J.P.; that it abused its discretion when it failed to consider her posttrial motions; and that her constitutional right to care for B.J.P. was violated. Mother additionally argues the District Court erred in denying her motion to change venue and her motion for a parenting investigation.

¶8 This Court reviews a district court's findings of fact supporting a parenting plan under the clearly erroneous standard. *In re Marriage of Williams*, 2018 MT 221, ¶ 5, 392 Mont. 484, 425 P.3d 1277 (internal citations omitted). A finding of fact "is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or . . . the district court made a mistake." *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. Absent clearly erroneous findings, this Court "will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion." *In re Marriage of Williams*, ¶ 5 (citing *In re Parenting of C.J.*, 2016 MT 93, ¶ 13, 383 Mont. 197, 369 P.3d 1028). A court abuses its discretion when it acts arbitrarily without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *Collie v. Prinkle (In re M.C.)*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. The determination of proper venue is a question of law involving the application of Montana's venue statutes to the pleaded facts. The Court's review of a trial court's grant

or denial of a change of venue is plenary; the Court merely determines whether the court's decision is legally correct. *Hovland v. Saylor (In re Parenting of S.C.B.)*, 2015 MT 19, ¶ 7, 378 Mont. 89, 342 P.3d 46.

¶9 We first address Mother's argument that the District Court erred in considering the best interests of B.J.P. in its final parenting plan. Relevant factors for the district court to consider when determining the best interests of the child are set forth in § 40-4-212(1), MCA. Mother asserts the District Court failed to consider all the relevant factors and relied heavily on the "stability of care" in issuing the final parenting plan. Section 40-4-212(1)(d), MCA ("the child's adjustment to home, school, and community"). The District Court considered all the relevant best interest factors and in doing so found that B.J.P. was accustomed to her home, school, and community under the current interim parenting plan structure, i.e., living with her Father. The District Court found that to drastically alter the parenting arrangement, as Mother proposed, would likely have had severe consequences on B.J.P. and would be contrary to her best interests. Upon full consideration of the record and evidence, this Court concludes the District Court did not abuse its discretion in ordering the final parenting plan.

¶10 Mother also specifically alleges the District Court failed to consider § 40-4-212(1)(a), (c), (e), (f), (g), (h), (l), (m), MCA. The District Court correctly weighed each of the best interest factors in its determination. Mother asserts the District Court failed to consider an equal parenting plan, in turn violating her wishes. However, the District Court found that altering the interim parenting plan to a 50/50

schedule would be contrary to B.J.P.'s home, school, and community stability. Mother asserts it was not in the best interests of any of the children to separate them and not allow contact between B.J.P. and her brothers. Although the District Court determined the sexual allegations had not been proven, it did consider the overall safety of B.J.P. in its decision to mandate only supervised visits when both B.J.P. and her brothers were together. Mother argues the District Court failed to consider Father's PTSD diagnosis and history of alcohol abuse and suicidal ideations. The court considered such evidence and indicated that Father did not deny the information but downplayed the severity of it. The court also noted that Mother was not without her own mental health concerns, and that given all the information before the court, it was still the court's determination that the parenting plan was in B.J.P.'s best interest. These facts were considered and weighed fairly by the District Court in its evaluation of the best interest factors.

¶11 Next, Mother asserts the District Court's failure to address nine posttrial motions was an abuse of discretion which resulted in her receiving no parenting time and violating her constitutional right to care for her child, B.J.P. It is well established law that a natural parent's right to the care and custody of his or her child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *In re A.S.*, 2004 MT 62, ¶ 12, 320 Mont. 268, 87 P.3d 408. Mother correctly asserts that it is also the policy of the state of Montana to recognize the constitutionally protected rights of parents and the integrity of the family unit. Section 40-4-227(1)(a), MCA. However, while a parent's constitutionally protected interest in the parental control of a child must be considered, the exercise of that right should not be contrary to the best interests of the child and the

7

child's protection. *See generally* § 40-4-227, MCA. Here, there is no indication that the proceedings were anything but fundamentally fair. The District Court responded to both Mother's motion for emergency telephonic hearing and motion to dissolve temporary order interfering with normal visitation. It found that Mother's affidavits did not establish an emergent reason why the interim parenting plan should be altered. The District Court cautioned that the State's abrupt dismissal of the criminal charges against the sons in relation to B.J.P. did not create an emergency that would justify altering the interim parenting plan, or at least until the final parenting plan had been determined. The District Court entered its final order addressing all the best interest factors and found that the stability and protection of B.J.P. was most important. Most of Mother's posttrial motions alleged errors relating to the July 2018 order, which was superseded by the court's final order. Additionally, in its April 2020 order, the District Court admonished Father that any further interference would result in full parental rights to Mother; thus, the District Court left available to Mother the ability to seek relief from Father's interference with the final parenting plan. The District Court did not abuse its discretion or otherwise err in how it handled the multitude of posttrial motions filed by Mother and, while we recognize Mother was denied visitation for a substantial period, the court was endeavoring to protect B.J.P.'s best interests while moving forward to a final parenting plan.

¶12 Mother's next argument asserts the District Court erred in denying her motion to change venue. Mother requested to change venue to Yellowstone County pursuant to § 25-2-201(3), MCA, which states, "The court or judge must, on motion, change the

8

place of trial . . . when the convenience of witnesses and the ends of justice would be promoted by the change." This Court has held § 40-4-211, MCA (2015), specifically applies to change of venue matters involving parenting plan cases. *Hovland*, ¶ 9. "A parenting proceeding initiated by a person other than a parent if the person has established a child-parent relationship with the child must be filed in the county in which the child resides or is found." *Hovland*, ¶ 9 (internal citations omitted). Here the District Court noted venue was proper because, the child, B.J.P., is found in Musselshell County. Mother also failed to object at the outset of proceedings to venue. The District Court did not err in determining venue was proper in Musselshell County.

¶13 Finally, Mother argues the District Court erred in denying her request for a parenting investigation. Mother filed her motion for a parenting investigation in June 2018 pursuant to § 40-4-215, MCA. *See* § 40-4-215(1), MCA ("If a parent or a court-appointed third party requests, or the court finds that a parenting proceeding is contested, the court may order an investigation and report concerning parenting arrangements for the child."). The statute is discretionary and a district court is not required to order a custody investigation. Throughout the proceedings, the District Court thoroughly considered Mother's reports and requests for amending the interim parenting plan and was not bound by Mother's request for a parenting investigation. The District Court did not err in denying Mother's request.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion

of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15    Affirmed.


                                        /S/ LAURIE McKINNON


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE