FILED

12/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0168

DA 21-0168

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 316N

IN RE THE PARENTING OF
A.J.B., a minor child,

KATIE MARIE THORNTON,

       Petitioner and Appellee,

  and

GREGORY STEVEN BALLARD,

       Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. ADR-2017-718
                Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brian J. Miller, Morrison, Sherwood, Wilson, and Deola PLLP, Helena,
          Montana

      For Appellee:

          Robyn L. Weber, Weber Law Firm, Helena, Montana

                      Submitted on Briefs:  November 10, 2021

                             Decided:  December 14, 2021

Filed:

                       _____
                                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Gregory Ballard appeals from the April 7, 2021 Findings of Fact, Conclusions of Law, and Order of the First Judicial District Court, Lewis and Clark County, adopting an amended parenting plan for his daughter, A.J.B. We affirm.

¶3 Ballard met Katie Thornton in 2015 shortly after Ballard's honorable discharge from the United States Navy. A.J.B. was born in June 2016. Ballard and Thornton separated in the fall of 2017. Ballard and Thornton were never married. In June 2018, the District Court entered a parenting plan that authorized A.J.B. to live with Thornton in Dillon and allowed Ballard to visit upon Thornton's approval.

¶4 At the time, Ballard suffered from undiagnosed service-related post-traumatic stress disorder; he often resorted to alcohol and gambling to cope with his PTSD. Ballard eventually attended a 17-week out-patient treatment program with the Veterans Administration. In 2019, he moved to Florida for a job, hoping to return to Dillon to work remotely and re-establish a relationship with A.J.B. after one year. Until his return to Dillon in May 2020, Ballard mainly stayed connected with A.J.B. through telephone and video, which Thornton facilitated.

¶5     Thornton remarried in July 2020. At the time of the District Court's decision, she and her husband were expecting a child.

¶6     On May 28, 2020, Ballard filed a motion to amend the 2018 parenting plan, asking the court to grant him 50/50 parenting time. The parties were unable to stipulate to an amended parenting plan, so on September 15, 2020, the court ordered an interim parenting plan, which allowed Ballard to have overnight parenting time with A.J.B.

¶7     On April 1, 2021, the District Court held a hearing on Ballard's motion. Thornton testified that a 50/50 parenting plan would be "really disruptive" and that "continuity of care [and a] stable home base is important for kids to have." She also testified that, under the interim plan, A.J.B. was having more temper tantrums and at times would hide under the table because she did not want to go with Ballard. Thornton attributed that behavior to A.J.B.'s difficulty adjusting to different sets of rules and different bedtime routines and stated, "I think it would be really different for her to make that transition multiple times throughout the week . . . ." On April 2, Ballard amended his proposed plan to a one week on/one week off schedule for each parent.

¶8     On April 7, the District Court entered its Findings of Fact, Conclusions of Law, and Order. The court's Amended Final Parenting Plan provided that A.J.B. would remain in Thornton's primary care and allowed Ballard to have custody from Friday through Monday every other week and one weekday each alternating week, as well as alternating holidays and two continuous weeks per month to each parent over the summer. Ballard appealed

3

the District Court's decision, claiming his fundamental right to parent was violated when the court did not award him a 50/50 parenting schedule.

¶9 This Court reviews a district court's findings of fact supporting a parenting plan for clear error. *In re Solem*, 2020 MT 141, ¶ 5, 400 Mont. 186, 464 P.3d 981; *In re M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. A finding of fact is clearly erroneous "if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record leaves us firmly convinced that the district court made a mistake." *In re M.C.*, ¶ 10. Absent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion. *In re Solem*, ¶ 6; *In re Marriage of Whyte*, 2012 MT 45, ¶ 23, 364 Mont. 219, 272 P.3d 102 (explaining that child custody cases present the court with difficult decisions and, accordingly, we presume the court carefully considered the evidence and made the correct decision). A court abuses its discretion when it "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice." *In re M.C.*, ¶ 10.

¶10 Ballard argues that the court's Amended Final Parenting Plan infringes on his fundamental right to parent his child because it does not give him equal parenting time with Thornton, even though both parties are fit parents to whom the child is well-bonded, and both live in the same town. Ballard asserts that the District Court abused its discretion when it entered the amended parenting plan, which only provides Ballard with 132 days of

full parenting time per year, because it denies him equal parenting without substantial evidence that the plan is in the best interest of the child.

¶11 Section 40-4-212(1), MCA, requires a district court to determine a parenting plan "in accordance with the best interest of the child." In determining the best interest of the child, a court must take into account "all relevant parenting factors," including, but not limited to, those set forth in § 40-4-212(1)(a)-(m), MCA. While a court must consider these statutory factors, it is not required to enter specific findings related to each. *Czapranski v. Czapranski*, 2003 MT 14, ¶ 11, 314 Mont. 55, 63 P.3d 499. "[A] court's findings must 'express the essential and determining facts upon which it rests its conclusions.'" *Crowley v. Crowley*, 2014 MT 42, ¶ 45, 374 Mont. 48, 318 P.3d 1031 (quoting *In re Marriage of Epperson*, 2005 MT 46, ¶ 30, 326 Mont. 142, 107 P.3d 1268).

¶12 The District Court did not abuse its discretion when it adopted the Amended Final Parenting Plan for A.J.B. The court carefully considered the factors in § 40-4-212, MCA, and concluded that the amended parenting plan is in the best interest of A.J.B. The District Court found that both parents love A.J.B. and wish to maximize their parenting time with her. Section 40-4-212(1)(a), MCA. The District Court considered A.J.B.'s current and future relationships with both parents and their extended families and concluded that the amended parenting plan fosters and accommodates these relationships. Section 40-4-212(1)(c), MCA. The court evaluated Thornton's concerns about stability and A.J.B.'s difficulty adjusting to the interim parenting plan and concluded that the amended parenting plan "will preserve and promote the continuity and stability of care for

A.J.B., while increasing the time she spends with her father." Section 40-4-212(1)(d), (h), MCA. The court acknowledged that Ballard's parenting time has been limited thus far and concluded that its amended parenting plan was in A.J.B.'s best interest because it "significantly increases parenting time with Greg." Section 40-4-212(l), MCA. The court has guaranteed Ballard the same legal rights as Thornton, such as the right to access medical information, to consult with school officials, attend activities, arrange medical treatment, as well as the right to be involved in other important decisions concerning A.J.B.

¶13 Ballard has failed to support his argument that anything but a 50/50 parenting plan is fundamentally unfair under these facts. A district court has "broad discretion when considering the parenting of a child." *In re Marriage of Whyte*, ¶ 23. The District Court found that "A.J.B. has lived her entire life with [Thornton] and most of her life with [Thornton's] parents" and "[t]heir importance to A.J.B. cannot be over-emphasized." The court found that A.J.B.'s young age and Thornton's testimony concerning A.J.B.'s upcoming transition into kindergarten "favor[], at minimum, maintaining something akin to the status quo" and Ballard's "proposed parenting plan would largely disrupt the stability the child currently enjoys." Substantial credible evidence in the record supports the District Court's finding that a plan promoting continuity and stability of care while still "significantly" increasing Ballard's parenting time serves A.J.B.'s best interest.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of

6

applicable standards of review. We conclude the District Court's findings of fact and conclusions of law were supported by substantial evidence. Accordingly, the District Court did not abuse its discretion in adopting the Amended Final Parenting Plan for A.J.B. The court's amended parenting plan does not infringe on Ballard's fundamental right to parent. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR