FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0514

DA 22-0514

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 76N

IN RE THE PARENTING OF:  C.N.L.,

a Minor Child,

AMANDA L. TOMLINSON, n/k/a AMANDA PIERRE,

Petitioner and Appellant,

and

JAMES D. LUKE,

Respondent and Appellee.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-16-780(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Peter F. Carroll, Attorney at Law, Kalispell, Montana

For Appellee:

Marybeth M. Sampsel, Measure Law, P.C., Kalispell, Montana

Submitted on Briefs:  February 15, 2023

Decided:  May 2, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Amanda Pierre (Pierre) appeals from the order entered by the Eleventh Judicial District Court amending the parties' parenting plan by appointing James D. Luke (Luke) primary custodian of Pierre's and Luke's shared child, C.N.L., who was about six years old when the order was entered. Pierre challenges the District Court's findings of fact, the modification decision, and the procedure employed.

¶3 Pierre and Luke entered a stipulated parenting plan in 2016 when C.N.L. was 8 months old, specifying that C.N.L. would alternate between the parties' homes every two weeks. The agreement was filed with the District Court. At that time, Pierre lived in Missoula, Montana, while Luke resided in Hungry Horse, Montana. The District Court found the parties co-parented "without apparent conflict until the fall of 2021." The District Court found that, in 2021, a dispute arose over C.N.L.'s attendance at kindergarten. While the parties disagree over the details surrounding the dispute, the District Court found that during the time C.N.L., in accordance with the parenting plan, was in Luke's custody, Pierre unilaterally enrolled C.N.L. in kindergarten at St. Ignatius, near where Pierre and her husband lived. The first day of school fell during Luke's allotted two-week time, and

2

despite demands from Pierre, Luke chose not to return C.N.L. early so she could begin kindergarten. In response, Pierre denied Luke parenting time which prompted Luke to file an *Application for Contempt.* Pierre responded by filing an *Ex Parte Motion for Interim Parenting Plan* in September of 2021. A show cause hearing was scheduled for October of 2021, wherein Luke indicated he did not want C.N.L. to be pulled out of school in St. Ignatius before a merits hearing, with which Pierre agreed. The merits hearing was conducted by the District Court on February 23, 2022. Both parties presented witnesses, and extensive testimony was given regarding C.N.L.'s living arrangements with both mother and father.

¶4 At the end of the hearing, the District Court orally adopted an interim parenting plan from the bench, which kept C.N.L. primarily with Pierre, and modified other matters, including the schedule for holidays and three-day weekends. The Court clarified that it would issue a final amended plan at a later date, preferably in advance of the commencement of the new school year. On May 18, 2022, the District Court issued an order that essentially codified the court's oral bench ruling at the hearing. That order was titled, "Court-Ordered Second Amended Interim Parenting Plan." On August 16, 2022, the District Court entered its Order Re: Motion to Amend Parenting Plan, ruling that, while it was "apparent [C.N.L.] is happy, well-adjusted, and loves both of her parents," primary custody would be granted to Luke, with Pierre having custody over C.N.L. on a pre-determined schedule. Pierre challenges this order on appeal, arguing the District Court

3

"essentially reversed" the earlier interim decision without conducting any further proceedings, constituting an improper modification.

¶5      District courts have broad discretion to make and modify parenting plans. Sections 40-4-212, -219, and -220, MCA. We review parenting plan determinations for an abuse of discretion. Absent an abuse of discretion, we decline to disturb a district court's decision. *In re C.J.*, 2016 MT 93, ¶ 13, 383 Mont. 197, 369 P.3d 1028. A district court abuses its discretion if it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re C.J.*, ¶ 13. We review a district court's findings of fact supporting a parenting plan to determine whether they are clearly erroneous. *In re the Parenting of M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake.

¶6      Pierre contends the District Court procedurally erred by issuing its final order modifying the then-existing parenting plan "without a hearing on the best interests of the child." Pierre may well have gotten the impression that the written interim order issued in May 2022, after the February 2022 merits hearing, was the expected final order, but a review with hindsight reveals it was not. In content, the May 2022 interim order codified the custody provisions expressed orally from the bench at the close of the hearing, and was clearly titled an "interim" order. Once the Court finalized its decision, it entered an order titled Order re: Motion to Amend Parenting Plan, containing its final rulings. Despite any

4

confusion that may have been generated by this sequence of events, we cannot conclude the District Court improperly modified the parenting plan without a necessary hearing.

¶7    Pierre next argues the District Court made two erroneous findings of fact that necessitate a reversal. First, Pierre points to the District Court's finding that there was a "preliminary agreement [C.N.L.] would ultimately attend school in Columbia Falls, Montana." After a review of the record, we agree with Pierre that this finding is not supported by substantial evidence. Nothing in the testimony of either Pierre or Luke suggests they had an agreement that C.N.L. would attend school in Columbia Falls. It appears the opposite was true, as one of the disagreements that spurred this proceeding was the timing of C.N.L.'s enrollment in school. Secondly, Pierre argues the District Court's finding that C.N.L. was enrolled in school "early" is likewise clearly erroneous. On this finding, we find substantial evidence to suggest that the enrolling C.N.L. in kindergarten for the fall of 2021 could have been considered "early." C.N.L. was five years old at the time, and Pierre testified she "knew that [Luke] was not wanting [C.N.L.] to go to school this previous year, 2021." Despite the stipulated parenting plan and Luke's objection, Pierre unilaterally enrolled C.N.L. in kindergarten before she and Luke agreed on the timing of C.N.L.'s enrollment in school, let alone on what school C.N.L. would attend.

¶8    Lastly, Pierre argues that, either with or independent of the clearly erroneous finding, the District Court's amendment of the parenting plan in the final order was an abuse of discretion. Pierre contends, as supported by the record, she is a good parent and that, in many ways, has taken the lead in providing for C.N.L.'s medical care and

5

educational needs. This Court does not question Pierre's parenting nor her devotion to C.N.L. However, the standard of review applicable here is whether the District Court abused the wide discretion it was given by the law to decide this question. A case like this is not easy. C.N.L. is fortunate to have two parents who have demonstrated their capability and dedication to C.N.L. The standard of review does not permit us to ask whether this Court would make the same decision, or whether a better case could be made for the other parent. Rather, we ask whether the District Court acted arbitrarily and beyond the bounds of reason. *In re C.J.*, ¶ 13. Here, the District Court considered C.N.L.'s living situations, the extended families in both cities, C.N.L.'s relationship with her parents and her extended family, the activities in which she could participate in both cities, as well as both parents' dispositions. Under the standard of review, and despite the clearly erroneous finding about the existence of a previous agreement between the parties regarding C.N.L.'s schooling, we cannot conclude the District Court failed in its consideration of the evidence or ultimately abused its discretion by making this difficult decision.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court did not abuse its discretion.

¶10 Affirmed.

/S/ JIM RICE

6

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR